# CITY OF ST. LOUIS v. GALT, Appellant.

### Division One, December 23, 1903.

1. **Weeds:** ORDINANCE: EVIDENCE. A city ordinance provided that any owner or occupant of a lot who shall allow or maintain thereon any growth of weeds to the height of over one foot, shall be guilty of a misdemeanor, and that "the word 'weed' as used herein shall be held to include all rank or vegetable growth which exhale unpleasant or noxious odors, and also high and vegetable growth that may conceal filthy deposits." *Held*, that the word "weeds" must be understood to mean what are commonly known to mankind and lexicographers as weeds. *Held*, also, that evidence "tending to prove that there were weeds on said premises from four to five feet high, and that about one-third were sunflowers," was sufficient to sustain a conviction under said ordinance, for if the sunflowers be eliminated from the case, there remains sufficient evidence to sustain the charge.

2. ———: ———: CONSTITUTIONALITY: NATURAL RIGHT. Said ordinances do not violate section 4, article 2, Missouri Constitution, which declares that all persons have a natural right to life, liberty and the gains of their own industry, for the rights preserved to the individual thereby are held in subordination to the rights of society, which has the right to cause the removal of any weeds from the midst of a populous city which might endanger the health of others.

3. ———: ———: ———: PRIVATE PROPERTY FOR PRIVATE USE. Nor do such ordinances violate section 20, article 2, Missouri Constitution, which prohibits the taking of private property for private use, with or without just compensation, without the consent of the owner, except, etc., for they do not take or authorize any one to take defendant's private property, but only provide that the use of his property shall be without injury to others.

4. ———: ———: ———: DUE PROCESS OF LAW. Nor do they violate the United States Constitution which declares that no one shall be deprived of life, liberty or property without due process of law, for they provide for a trial by jury according to the settled course of judicial proceedings.

5. ———: ———: POWER TO ENACT SUCH ORDINANCE: NUISANCE. Even under the broad powers granted to St. Louis by its charter, the city can not by ordinance declare that to be a nuisance which

is not, and can not, from its nature, be a nuisance. But if the object to be accomplished is conducive to public interests and to public health, especially in the exercise of its police power, the courts will accord to the city the liberal discretion, both as to the ends sought and the means employed. And since it is a matter of common knowledge that decaying vegetable matter produces disease, it is held that the city, under its charter power "to secure the general health of the inhabitants by any means necessary," and "to pass such ordinances . . . as may be expedient in maintaining the health and welfare of the city," had power to pass an ordinance requiring the owners or occupants of lots to remove all weeds over a foot high and to punish them, as for a misdemeanor, for failure to comply with the same.

6. ———: ———: ———: RELATIVE CONDITIONS. Cities require many police regulations that are wholly unnecessary and would be intolerable in the country.

Appeal from St. Louis Court of Criminal Correction.—
*Hon. Willis H. Clark*, Judge.

AFFIRMED.

*Smith P. Galt, pro se.*

(1)  Technically, the evidence did not show any violation of the ordinance, if it were valid, because the language used by the witness: "That there were weeds on the premises from four to five feet high, and about one-third were sunflowers," must be taken in its ordinary sense, and does not meet the requirements of the new definition of "weeds," given in the ordinance (sec. 612): "All rank vegetable growth which exhale unpleasant and noxious odors, and also high and rank vegetable growth that may conceal filthy deposits." (2) But I prefer planting myself on the broad proposition that the ordinance is invalid and void, because "it is not competent for a city to declare that a nuisance which is not such in fact." St. Louis v. Packing Co., 141 Mo. 375; State v. Beattie, 61 Mo. App. 131. And weeds are not a nuisance.

*Chas. W. Bates* and *Wm. F. Woerner* for respondent.

(1)   The record expressly recites that the evidence tended to prove that there were weeds on the premises; by which must be understood such weeds as were meant in the ordinances under which defendant was being prosecuted.   This court can not reverse or review the finding of the lower court that the evidence proved that there were such weeds (as defined by ordinance) in the face of the recital that the evidence tended to prove there were such weeds, and especially since appellant does not include in the bill of exceptions all, or even any, of the evidence upon which such finding was based. His "technical" point is therefore untenable.   Clark v. Railroad, 93 Mo. App. 459; Williams v. Stroub, 168 Mo. 355; Reed v. Peck, 163 Mo. 336; Davis v. Vories, 141 Mo. 241.   (2)   The city had the right by ordinance to prohibit the allowance or maintenance of any such growth as that designated, under its powers to provide police regulations for the comfort, health and welfare of its citizens, and "to declare, prevent and abate nuisances on public or private property and the causes thereof," "to secure the general health of the inhabitants by any means necessary" and "to pass such ordinances not inconsistent with the charter as may be expedient, in maintaining the health and welfare of the city."   Charter, art. 3, sec. 26, subdivisions 6, 14; Bluedorn v. Railroad, 108 Mo. 443; Ferrenbach v. Turner, 86 Mo. 420; Green v. Savannah, 6 Ga. 1.   The courts do not interfere in the legitimate exercise of those important and necessary police powers by which the comfort and health of the inhabitants are secured and safeguarded by the State, acting either directly or through the municipal bodies to which has been delegated that power and duty.   And the act in question is a valid exercise of that power, unless this court can say as a matter of law that vegetation exhaling noxious vapors or

which is so high and rank that it may conceal filthy deposits, is indisputably and universally known to be unobnoxious and harmless. State v. Layton, 160 Mo. 497; State v. Main, 69 Conn. 135; Ferrenbach v. Turner, supra; Green v. Savannah, 6 Ga. 9; 22 Am. and Eng. Ency. Law (2 Ed.), p. 922; Bluedorn v. Railroad, 108 Mo. 443; Lawton v. Steele, 152 U. S. 140; Powell v. Pennsylvania, 127 U. S. 678.

MARSHALL, J.—The defendant is the owner of a certain lot in the city of St. Louis. He was proceeded against and fined in the police court for a violation of sections 608 and 612 of the Municipal Code of that city, which sections are commonly known as the "weed ordinance," and are as follows:

"Section 608. Any owner, lessee, or occupant, or any agent, servant, representative or employee of any such owner, lessee or occupant having control of any lot of ground, or any part of any lot, who shall allow or maintain on any such lot any growth of weeds to a height of over one foot, shall be deemed guilty of a misdemeanor, and upon conviction shall be fined not less than ten nor more than one hundred dollars, to be recovered for the use of the city of St. Louis, before any court having competent jurisdiction.

"Section 612. The word 'weeds' as used herein shall be held to include all rank vegetable growth which exhale unpleasant and noxious odors, and also high and *rank* vegetable growth that may conceal filthy deposits."

He appealed to the court of criminal correction, where he was tried anew and again found guilty, and from that judgment, he appealed to this court.

The abstract of the record shows that upon the latter trial the following proceedings were had: first, the defendant admitted the ownership of the lot, and that he had received a notice from the city health commissioner that a nuisance, in the form of weeds, existed on his lot

and requesting him to abate the same; second, "the city offered evidence tending to prove that at the time said notice was issued and served there were weeds on the said premises from four to five feet high and about one-third were sunflowers.     The city offered in evidence said sections 608 and 612 of city ordinance number 19991, approved April 3, 1900, supra; to the admission of which defendant objected on the ground that the same were incompetent, as said sections are invalid and void, as the city had no authority or power to pass the same under its charter, and also the same are a violation of sections 4 and 20 of article 2 of the Constitution of Missouri, and articles 5 and 14 of the amendments to the Constitution of the United States; the said objection was by the court overruled, and defendant then and there excepted to the action of the court in overruling said objection, and said sections were read in evidence. That was all the evidence in the case, and the court found the defendant guilty and adjudged against him a fine of ten dollars and costs."    Third, that the defendant filed a motion for a new trial, which was overruled, and he appealed.

Upon this showing, the defendant assigns two errors: first, that there was no evidence to support the finding of the court; and, second, that the city had no power to enact the ordinance upon which this case rests, and that it violates sections 4 and 20 of the Constitution of Missouri, and articles 5 and 14 of the amendments of the Constitution of the United States.

## I.

The first assignment of error is untenable. The testimony is not preserved by a bill of exceptions or presented by an abstract of the record.   The record only shows that "the city offered evidence tending to prove that at the time said notice was issued and served there were weeds on said premises from four to five feet high,

and about one-third were sunflowers.'' The record does not show that the defendant objected to the introduction of such evidence, nor that the court ruled adversely to him upon such proposition. The defendant, however, challenges, not the admissibility of the testimony, but its probative force, by assigning as a ground for a new trial, and as error, that there was no evidence to support the finding, and the particular reason given for the contention is that the evidence does not show that the weeds that were shown to be upon his lot, exhaled unpleasant and noxious odors, nor that they were high and rank.

The record shows that there were weeds upon the lot and that they were four or five feet high, and that the notice to abate them was dated on July 10th. So that there is positive evidence that the weeds came within the definition of the term ''weeds'' as employed in the ordinance, so far as being ''high'' is concerned, and from the time of the year when the offense is charged to have occurred, the trial court was justified in inferring that weeds that were four or five feet high were ''rank,'' and also that rank weeds, of the height specified, will exhale unpleasant and noxious odors.

But aside from this, the ordinance does not purport to give an exclusive definition of what shall be taken to be within the term ''weeds,'' but, on the contrary, only attempts to include certain things within the meaning of that term, which possibly, might not otherwise be commonly understood to be covered by the term, and leaves the term to speak for itself as to all other things.

The word ''weed'' has a common, everyday, meaning to the mind of every man. It may also have a technical meaning to the botanist or the chemist. It is a nuisance to the farmer, the gardener, or the owner of a well-kept lawn, notwithstanding that some weeds may contain valuable medicinal properties, which when extracted may be of benefit and profit to mankind. But it is a fact of common information, of which courts may.

properly take judicial notice, that a high, rank growth of weeds in a populous community has a strong tendency to produce sickness and to impair the health of the inhabitants, and so may be a nuisance in such locality, notwithstanding they may be comparatively innocuous in the country, when far away from human habitation.

The defendant quotes the definition of "weed" as given by the Century Dictionary, as follows:

"Any one of those herbaceous plants which are useless and without special beauty or especially which are positively troublesome. The application of this general term, is somewhat relative. Handsome but pernicious plants, as the ox-eye daisy, cone-flower, and the purple cow-wheat of Europe, are weeds to the agriculturist, flowers to the esthetic. There are also plants that are cultivated for use or beauty, as grasses, hemp, carrot, parsnip, morning-glory, which become weeds when they spring up where they are not wanted. The exotics of cool countries are sometimes weeds in the tropics."

Webster's International Dictionary defines the word "weed" as follows: "1. Underbrush; low shrubs. 2. Any plant growing in cultivated ground to the injury of the crop or desired vegetation, or to the disfigurement of the place; an unsightly, useless, or injurious plant." Adding in this connection, "The word has no definite application to any particular plant, or species of plants. Whatever plants grow among corn or grass, in hedges, or elsewhere, and are useless to man, injurious to crops, or unsightly or out of place, are denominated weeds. 3. Fig.: Something unprofitable or troublesome; anything useless."

It is manifest, therefore, that the city ordinance did not intend to restrict the lexicographer's definition of the word, nor to give an exclusive meaning to it. So that the defendant may have been guilty of a violation of section 608, by permitting weeds, as they are com-

monly known to mankind and to the lexicographers, to grow on his lot, although such weeds may not fall within the inclusive definition of section 612 of the Municipal Code of St. Louis.

But with truly rural instincts, and with a commendable and lively recollection of his boyhood days and tastes, the defendant eloquently objects to the sufficiency of the evidence to convict him of wrongdoing, because, he says, the evidence shows that one-third of the weeds on his lot were sunflowers—the emblematic flower of our sister State, Kansas—"the queen of our mother's garden"—the flower that has been immortalized by Moore in the lines:

> The heart that has truly loved, never forgets,
> But as truly loves on to the close;
> As the sunflower turns to her God, when he sets,
> The same look that she turned when he rose.

If, in the exercise of the police power conferred upon the city by the State, the city has offended against the poetic, the aesthetic or the rustic tastes of the defendant, or has blurred, in even the smallest degree, his memory of his happy boyhood days, then the court should closely scrutinize the act of the city, and protect the rights of the defendant, being therein restrained only by a proper observance of the principles that underlie the wholesome doctrine of *"sic utere tuo ut alienum non laedas."*

A critical analysis of the evidence, however, fails to convince the impartial mind that either the ordinance or the evidence was leveled at the famous, emblematic flower, which is so sacred to the defendant. The offense proved would be just the same if the sunflowers be eliminated from consideration, and if the defendant had obeyed the notice from the health commissioner by cutting the weeds and leaving the sunflowers, he would, probably, not have been proceeded against; or, at any rate, would not have been the appellant in this case.

## II.

The second error assigned challenges the power of the city to enact the ordinance in question, and claims that it violates sections 4 and 20 of article 2 of the Constitution of Missouri, and the fifth and fourteenth amendments to the Constitution of the United States.

These are grave defects in the ordinance, if the claim is well taken.

The fourth section of article 2 (the Bill of Rights of our Constitution) is as follows:.

"That all constitutional government is intended to promote the general welfare of the people; that all persons have a natural right to life, liberty and the enjoyments of the gains of their own industry; that to give security to these things is the principal office of government, and that when government does not confer this security, it fails of its chief design."

The point that this police regulation of the city violates this provision of our organic law, has, at least, the refreshing merit that it is a variation from the grounds upon which such city ordinances are usually attacked, but it is unfortunate for the defendant that this contention is not open to a more extended consideration than can be given to it in this case, because it has been firmly settled by the decisions in this State that the rights preserved to the individual by this section are held in subordination to the rights of society. [State v. Addington, 12 Mo. App. l. c. 217; s. c., 77 Mo. 110; St. Louis v. Meyrose Mfg. Co., 139 Mo. 560; State v. Beattie, 16 Mo. App. l. c. 145; City of Chillicothe v. Brown, 38 Mo. App. 609.]

Therefore, the right of the defendant to grow weeds upon his city lot is subordinate to the right of society that he shall not do so, because he would thereby endanger the health of others.

Section 20 of article 2 of our Constitution prohibits the taking of private property for private use, with or

without compensation, without the consent of the owner, except for private ways of necessity, or for drains for agricultural or sanitary purposes. The defendant invokes this guaranty.

The apparent infirmity underlying this contention is that the ordinance does not take or authorize any one to take the defendant's property, but only regulates his use of the property so as not to injure others. The same contention was held to be untenable in Green v. Savannah, 6 Ga. 1. c. 13, where a city ordinance forbidding the growing of rice within the limits of the city of Savannah, was held to be within the police power conferred upon the city by the State.

The ordinance in question, therefore, does not violate the Constitution of Missouri.

The fifth amendment to the Constitution of the United States, invoked by the defendant, prohibits the taking of private property for public use without just compensation, and provides that no person shall be deprived of life, liberty or property without due process of law.

Enough has already been said to show that the defendant is not deprived of his property for public use, or at all, and therefore he is not within the protection of the Federal Constitution in this regard.

The fact that the defendant is here upon appeal from a judgment of a lower court where he had exactly the same kind of a trial that is accorded to every other person similarly offending, is answer complete to his claim that he has not had the benefit of due process of law.

Due process of law means according to the settled course of judicial proceedings, and such process may be regulated by the laws of the several States. [Walker v. Sauvinet, 92 U. S. 90; Pennoyer v. Neff, 95 U. S. 714; Hagar v. Reclamation District, 111 U. S. 701; Dartmouth College v. Woodward, 4 Wheat. 518; Andrus

v. Insurance Co., 168 Mo. l. c. 162; Cooley's Const. Lim. (6 Ed.), p. 431.]

This leaves only for consideration the question whether the State has conferred upon the city the power to pass the ordinance involved in this case.

The Constitution granted to St. Louis the right to adopt a charter, subject only to the limitation that it should be subject to and in harmony with the Constitution and laws of the State. [Const., art. 9, secs. 20 to 25.] Pursuant to this grant of power, St. Louis adopted its charter, which gave it the power, "to declare, prevent and abate nuisances on public and private property, and the causes thereof;" "to secure the general health of the inhabitants by any means necessary;" and "to pass such ordinances not inconsistent with the charter as may be expedient, in maintaining the health and welfare of the city." [Charter, St. Louis, art. 3, sec. 26, pars. 6, 14.]

Speaking of the power conferred upon St. Louis by this charter, this court, in Ferrenbach v. Turner, 86 Mo. l. c. 420, said: "None of the objects sought to be secured by municipal government are of more importance than the health of the inhabitants, and, hence, to that end, we find that such extensive powers were conferred upon the defendant" [the defendant Turner was the street commissioner of the city, but the city was also a party defendant].

Of course, even under such broad powers, it is not competent for the city to declare that to be a nuisance which is not, and can not from its nature, be a nuisance in fact. [St. Louis v. Heitzeberg Packing Co., 141 Mo. 375.] But if the object to be accomplished is conducive to public interests and to public health, especially in the exercise of its police power, the courts will accord to the city a liberal discretion, both as to the ends sought and to the means employed. [Lawton v. Steele, 152 U. S. l. c. 140; Powell v. Pennsylvania, 127 U. S. 678; State

v. Layton, 160 Mo. l. c. 497; Ferrenbach v. Turner, 86 Mo. l. c. 421.]

It is a matter of common knowledge that decaying vegetable matter produces disease. One of the definitions of "malaria," given by Webster's International Dictionary, is: "3. (Med.) A morbid condition produced by exhalations from decaying vegetable matter in contact with moisture, giving rise to fever and ague and many other symptoms characterized by their tendency to recur at definite and usually uniform intervals."

To prevent such a condition in a populous community is one of the chief objects of municipal government, and is fully authorized by the police power conferred upon St. Louis by the provisions of the charter quoted. [St. Louis v. Weitzel, 130 Mo. 600; St. Louis v. Fischer, 167 Mo. 654.]

Cities require many police regulations that are wholly unnecessary and would be intolerable in the country. [Ex parte Cheney, 90 Cal. 617; Slaughter-House Cases, 16 Wall. 36.] And many things are a nuisance in a city, which are harmless in the country. Every man who selects urban life and holds city property necessarily incurs liabilities and gives up certain natural rights that do not pertain to life or property in the country. [Green v. Savannah, 6 Ga. l. c. 11; Ex parte Cheney, 90 Cal. 617.]

What is a nuisance is a relative question oftener than it is an abstract fact. Blackstone was wise in not attempting an explicit, invariable definition, and in confining himself to general terms. He said a nuisance is "anything that worketh hurt, inconvenience or damage." [3 Black. Com., 216.] The Am. and Eng. Enc. Law (2 Ed.), vol. 21, p. 682, says: "A nuisance is literally an annoyance, and signifies in law such a use of property or such a course of conduct as, irrespective of actual trespass against others or of malicious or actual criminal intent, transgresses the just restrictions upon use or conduct which the proximity of other persons or

property in civilized communities imposes upon what would otherwise be rightful freedom.''

Wood on Nuisances (3 Ed.), vol. 1, sec. 1, gives substantially the same definition, and adds: ''It is a part of the great social compact to which every person is a party, a fundamental and essential principle in every civilized community, that every person yields a portion of his right of absolute dominion and use of his own property, in recognition of, and obedience to, the rights of others, so that others may also enjoy their property without unreasonable hurt or hindrance. This is an essential rule, a wise provision of the law, and one that is for the mutual protection and benefit of every member of society.''

It is upon this principle that quarantine laws, health regulations, and general-welfare rules, are bottomed. A man may be willing to run the risk of disease by permitting his premises to be in an unsanitary condition, but he has no right to subject his neighbor to such risks. He may be willing to run the risk of personal inconvenience or injury, by maintaining any dangerous agency upon his premises, but he can not lawfully subject his neighbor to such risks. The notes to the text of the Am. and Eng. Enc. Law (2 Ed.), vol. 21, p. 682, et seq., contain a great number of cases illustrative, but not all comprehensive, of the principle under discussion.

The power to prevent nuisances, to provide for the general health, is as broad as the necessity for its exercise.

The ordinance in question strikes at a cause that is known to operate against the public health, and it is therefore a valid exercise of the police power conferred upon the city of St. Louis.

The judgment of the lower court is affirmed. All concur.