CITY OF LINCOLN, NEBRASKA, A MUNICIPAL CORPORATION, APPELLEE, v. ABC BOOKS, INC., A NEBRASKA CORPORATION, APPELLANT.

470 N.W.2d 760

Filed June 14, 1991.    No. 89-216.

Douglas L. Kluender and K. Kristen Witter, of Healey, Wieland, Kluender, Atwood, Jacobs & Geier, for appellant.

William F. Austin, Lincoln City Attorney, for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

BOSLAUGH, J.

This appeal involves the constitutionality of a provision of the Lincoln Municipal Code, § 5.12.175 (created by ordinance No. 14335), governing the interior visibility of viewing booths in picture arcades. The defendant, ABC Books, Inc., appeals from the judgment granting a permanent injunction to the plaintiff, City of Lincoln, enjoining ABC Books from operating picture arcades in violation of the Lincoln Municipal Code.

ABC Books is a Nebraska corporation which operates the Adult Book Store and Cinema X Theatre at 921 O Street in Lincoln, Nebraska. The premises include 33 coin-operated booths in which members of the public pay to view sexually explicit films or videos. All of the booths are "single person" booths, with a floor area approximately 3 by 3 feet. Each booth is enclosed, that is, each booth has a full-length door which closes and locks so that patrons can watch the sexually explicit movies behind closed doors. Patrons may view the movies in two types of booths. There are 20 coin-operated 8-millimeter film booths. In these, the movie is projected onto the inside of the booth door after the customer enters the booth and shuts the door. There are also 13 coin-operated video booths in which customers can view preprogrammed selections on television monitors. The television monitors are positioned on one side of the booth.

On March 10, 1986, the Lincoln City Council enacted

ordinance No. 14335, amending chapter 5.12 of the Lincoln Municipal Code to define picture arcades and to regulate the operation of such picture arcades in the city. The relevant sections as amended by the ordinance read:

**5.12.010 Definitions.** . . .

. . . .

The term "picture arcade" shall mean any place to which the public is admitted wherein one or more coin- or slug-operated or electrically, electronically, or mechanically controlled still or motion picture machines, projectors, or video cassettes are maintained for the purpose of showing still or motion pictures to five (5) or fewer persons per machine at any one time.

. . . .

**5.12.175 Operation of picture arcade.** . . .

. . . .

(b) No person shall maintain any picture arcade unless the entire interior of such premises wherein the pictures are viewed is visible upon entrance to such premises. No partially or fully enclosed booths or partially or fully concealed booths shall be maintained.

(c) No permittee, his or her employee, agent, partner, director, officer, stockholder, or manager of any picture arcade shall knowingly allow or permit any act of sexual intercourse, sodomy, oral copulation, or masturbation to be committed in the subject picture arcade, or knowingly permit or allow the subject picture arcade to be used as a place in which solicitations for sexual intercourse, sodomy, oral copulation, or masturbation openly occur.

Lincoln Mun. Code §§ 5.12.010 and 5.12.175 (1986).

Lincoln Mun. Code § 5.12.220 (1986) sets out the penalty for violations of the provisions of chapter 5.12:

Any person upon whom a duty is placed by the provisions of this chapter who shall fail, neglect, or refuse to perform such duty, or who shall violate any of the provisions of this chapter shall be deemed guilty of a misdemeanor and upon conviction thereof shall be fined in any sum not to exceed one hundred dollars ($100.00) and shall stand committed to the city jail until such fine and costs of

prosecution are paid.

The city alleges that the ordinance was passed as a response to complaints that sexual activity was occurring on the defendant's premises. At a public hearing regarding the ordinance, the city's chief of police, Dean Leitner, testified that sexual solicitations were occurring in and around the picture arcades of the premises. He explained that the booths have apertures which allow participants on either side of the wall to engage in sexual activity with one another. The booths, in effect, facilitate anonymous sexual activity.

In spite of the ordinance's promulgation on March 10, 1986, the defendant continues to operate its picture arcades in the same manner. The record reveals that the defendant has been convicted on three separate occasions for violating the ordinance, and yet the arcades continue to be operated with enclosed booths. At trial, police officers testified that the viewing booths located in the picture arcades remain fully enclosed and concealed with doors. Undercover officers testified that illicit sexual activities continue to occur on the defendant's premises. Officers personally observed instances of masturbation, fondling, and solicitation of prostitution by patrons on the premises of the store. In addition, officers observed semen, dirty Kleenex, and condoms on the floors of the booths. In sum, the evidence indicates that sexual solicitations, assaults, and indecent exposures occur on a continual basis in and around the picture arcades.

On appeal, the defendant contends that (1) § 5.12.175 (ordinance No. 14335) is unconstitutional because it is (a) vague, (b) overbroad, or (c) a prior restraint upon freedom of expression; (2) the trial court erred in finding that the defendant's fully enclosed booths constituted a nuisance and as such justified the issuance of an injunction; and (3) the trial court erred in failing to grant an injunction prohibiting the city clerk from refusing to issue mechanical amusement device permits to the defendant.

This is an action in equity, and as such, in addressing the issues presented, this court reviews the record de novo, subject to the rule that where credible evidence is in conflict on material issues of fact, this court will consider the fact that the trial court

observed the witnesses and accepted one version of the facts over another. *Sasich v. City of Omaha*, 216 Neb. 864, 347 N.W.2d 93 (1984); *Grint v. Hart*, 216 Neb. 406, 343 N.W.2d 921 (1984).

## I. CONSTITUTIONALITY OF ORDINANCE NO. 14335

In passing upon the constitutionality of an ordinance, this court begins with a presumption that the ordinance is valid; consequently, the burden is on the challenger to demonstrate the constitutional defect. *City of Lincoln v. Bruce*, 221 Neb. 61, 375 N.W.2d 118 (1985); *State v. Davison*, 213 Neb. 173, 328 N.W.2d 206 (1982).

### 1. WHETHER THE ORDINANCE IS VAGUE

ABC Books argues that the ordinance is impermissibly vague in violation of the 1st and 14th amendments to the U.S. Constitution. The portion of the ordinance of which ABC Books complains is found in § 5.12.175(b) of the code, which provides in part: "No person shall maintain any picture arcade unless the entire interior of such premises wherein the pictures are viewed is visible upon entrance to such premises. No partially or fully enclosed booths or partially or fully concealed booths shall be maintained."

When a legislative enactment is challenged on vagueness grounds, the issue is whether the two requirements of procedural due process are met: (1) adequate notice to citizens and (2) adequate standards to prevent arbitrary enforcement. *Kolender v. Lawson*, 461 U.S. 352, 103 S. Ct. 1855, 75 L. Ed. 2d 903 (1983). See, also, *Grayned v. City of Rockford*, 408 U.S. 104, 92 S. Ct. 2294, 33 L. Ed. 2d 222 (1972); *State v. Fellman*, 236 Neb. 850, 464 N.W.2d 181 (1991); *State v. Monastero*, 228 Neb. 818, 424 N.W.2d 837 (1988). In other words, due process requires that an enactment supply (1) a "person of ordinary intelligence a reasonable opportunity to know what is prohibited" and (2) "explicit standards for those who apply [it]." *Grayned v. City of Rockford, supra* at 408 U.S. at 108. The criteria employed in evaluating language for vagueness embrace " 'flexibility and reasonable breadth, rather than meticulous specificity' " or "mathematical certainty." *Grayned*

*v. City of Rockford, supra* at 408 U.S. at 110.

Here, although the ordinance might have been drafted with greater precision, there is nothing vague about the prohibition against fully enclosed booths like those maintained by ABC Books. We find the ordinance meets both due process requirements. The ordinance provides adequate notice to persons of ordinary intelligence regarding the conduct prohibited and provides adequate standards to law enforcement officials. See, *Hoffman Estates v. Flipside, Hoffman Estates*, 455 U.S. 489, 102 S. Ct. 1186, 71 L. Ed. 2d 362 (1982); *Connally v. General Const. Co.*, 269 U.S. 385, 46 S. Ct. 126, 70 L. Ed. 322 (1926).

## 2. Whether the Ordinance is Overbroad

ABC Books also challenges the constitutionality of the ordinance on overbreadth grounds; however, it fails to address that issue in its brief. See Neb. Ct. R. of Prac. 9D(1)d (rev. 1989). To be considered by the Supreme Court, an error must be assigned and discussed in the brief of one claiming that prejudicial error has occurred. *Federal Land Bank of Omaha v. Victor*, 232 Neb. 351, 440 N.W.2d 667 (1989). Therefore, we do not consider the overbreadth error assigned by ABC Books.

## 3. Whether the Ordinance Creates a System of Prior Restraint

ABC Books next contends that ordinance No. 14335 constitutes an impermissible prior restraint on free speech. ABC Books argues that the ordinance constitutes a prior restraint because "without the physical separation . . . of a booth," it is "in effect, prevented from showing video movies." Brief for appellant at 10.

" 'Governmental action constitutes a prior restraint when it is directed to suppressing speech because of its content before the speech is communicated.' " *U.S. v. Kaun*, 827 F.2d 1144, 1150 (7th Cir. 1987) (quoting *In re G. & A. Books, Inc.*, 770 F.2d 288 (2d Cir. 1985), *cert. denied, M. J. M. Exhibitors, Inc. v. Stern*, 475 U.S. 1015, 106 S. Ct. 1195, 89 L. Ed. 2d 310 (1986)). In the present case, the Lincoln city ordinance does not restrict the viewing of any forms of entertainment or grant officials the discretion to suppress any speech based upon its content.

In *Berg v. Health and Hosp. Corp. of Marion County, Ind.*, 865 F.2d 797 (7th Cir. 1989), The Health and Hospital Corporation of Marion County, Indiana, enacted an "open booth" ordinance designed to eliminate closed structures at picture arcades. Plaintiffs alleged the ordinance was an unconstitutional prior restraint on free speech. The U.S. Court of Appeals for the Seventh Circuit disagreed, holding that " '[t]he ordinance does not ban the viewing of films or other entertainment, but merely regulates the environment in which the viewing occurs.' " *Id.* at 801. Here, the ordinance does not restrain ABC Books from selling to its patrons whatever books, films, videotapes, or other forms of entertainment it may wish, provided ABC Books complies with the ordinance. Consequently, as in *Berg*, there is simply no prior restraint of free speech. See, also, *Postscript Enterprises v. City of Bridgeton*, 905 F.2d 223 (8th Cir. 1990) (open booth ordinance is not an unconstitutional prior restraint on free speech); *Broadway Books, Inc. v. Roberts*, 642 F. Supp. 486 (E.D. Tenn. 1986) (open booth requirement does not constitute prior restraint); *Martinez v. State*, 744 S.W.2d 224 (Tex. App. 1987) (municipal open booth ordinance does not operate as prior restraint on free speech).

### 4. Time, Place, and Manner Restriction

ABC Books also contends that the ordinance is unconstitutional as a time, place, and manner restriction because it is not tailored narrowly enough and does not further a significant governmental interest.

The city's ordinance does not limit its applicability to picture arcades where obscene movies are shown, nor does the city contend that the films or videos viewed therein are obscene. Therefore, this court assumes that the materials viewed in the booths are protected by the first amendment. The U.S. Supreme Court has long held that protected first amendment speech may be subject to time, place, and manner restrictions if sufficiently justified and narrowly enough drawn. *Ward v. Rock Against Racism*, 491 U.S. 781, 109 S. Ct. 2746, 105 L. Ed. 2d 661 (1989); *Clark v. Community for Creative Non-Violence*, 468 U.S. 288, 104 S. Ct. 3065, 82 L. Ed. 2d 221 (1984); *Young v.*

*American Mini Theatres*, 427 U.S. 50, 96 S. Ct. 2440, 49 L. Ed. 2d 310 (1976); *United States v. O'Brien*, 391 U.S. 367, 88 S. Ct. 1673, 20 L. Ed. 2d 672 (1968).

In *Ward v. Rock Against Racism, supra*, the Supreme Court set out the appropriate standard for reviewing governmental regulations on the time, place, or manner of protected speech:

> [T]he government may impose reasonable restrictions on the time, place, or manner of protected speech, provided [1] the restrictions "are justified without reference to the content of the regulated speech, [2] that they are narrowly tailored to serve a significant governmental interest, and [3] that they leave open ample alternative channels for communication of the information."

491 U.S. at 791 (quoting *Clark v. Community for Creative Non-Violence, supra*).

Under the time, place, and manner analysis, other courts have consistently upheld "viewing booth" ordinances as valid exercises of state police power. See, *Doe v. City of Minneapolis*, 898 F.2d 612 (8th Cir. 1990); *Berg v. Health and Hosp. Corp. of Marion County, Ind., supra*; *Wall Distributors, Inc. v. City of Newport News, Va.*, 782 F.2d 1165 (4th Cir. 1986); *Ellwest Stereo Theatres, Inc. v. Wenner*, 681 F.2d 1243 (9th Cir. 1982); *Suburban Video, Inc. v. City of Delafield*, 694 F. Supp. 585 (E.D. Wis. 1988); *Broadway Books, Inc. v. Roberts, supra*; *EWAP, Inc. v. City of Los Angeles*, 97 Cal. App. 3d 179, 158 Cal. Rptr. 579 (1979); *Deluxe Theater v. City of San Diego*, 175 Cal. App. 3d 980, 221 Cal. Rptr. 100 (1985). Similarly, we find no constitutional infirmity in ordinance No. 14335.

The first requirement of the *Ward* time, place, and manner test is easily met. The ordinance is indisputably content-neutral; it draws no distinction between the types of films or videos which might be viewed in the booths. Thus, the ordinance is unrelated to the content of the movies shown in the booths.

The second element of the *Ward* test requires that the ordinance be narrowly tailored to serve a significant governmental interest. The narrow tailoring requirement is satisfied " 'so long as the . . . regulation promotes a substantial government interest that would be achieved less effectively absent the regulation.' " *Ward v. Rock Against Racism, supra*

at 491 U.S. at 799 (quoting *United States v. Albertini*, 472 U.S. 675, 105 S. Ct. 2897, 86 L. Ed. 2d 536 (1985)). The city has a significant interest in preventing the kind of unlawful conduct, as well as the health and safety problems, which regularly occurs in the enclosed booths on ABC Books' premises. The evidence at trial showed that incidents of masturbation, fondling, and indecent exposure occur in the enclosed booths. Further, semen, dirty Kleenex, and condoms can be observed on the floors of the booths. The prohibition of such booths furthers the city's interest in deterring and detecting the use of the premises for such unlawful activity. The city's interest in deterring not only unlawful conduct, but conduct inimical to public health, decency, and order, would not be achieved as effectively without the ordinance, and thus the ordinance is narrowly tailored to serve a significant governmental interest.

The third *Ward* requirement necessitates that the city show that the ordinance leaves "open ample alternative channels of communication" of sexually explicit material. This requirement is also easily met. The ordinance in no way prohibits or regulates the time or place for viewing the sexually explicit films or videos. It simply requires that no partially or fully enclosed or concealed booths can be maintained. ABC Books can provide and its patrons can watch, except in partially or fully enclosed or concealed booths, films or videos whenever and wherever they desire. The viewing public is in no way "denied access to the market or . . . unable to satisfy its appetite for sexually explicit fare." *Young v. American Mini Theatres*, 427 U.S. 50, 62, 96 S. Ct. 2440, 49 L. Ed. 2d 310 (1976). Thus, ample alternative channels for communicating sexually explicit films and videos are left open by the ordinance.

Finally, ABC Books argues that the ordinance suppresses free speech because it would lose money by complying with the ordinance, and as a result, its film and video operation could close. In *Young v. American Mini Theatres, supra*, the Supreme Court upheld a zoning ordinance which forbade the owners of two adult theaters to exhibit adult movies at their current locations. Justice Powell noted that "[t]he constraints of the ordinance with respect to location may indeed create economic loss for some who are engaged in this business." *Id.* at 427 U.S.

at 78 (Powell, J., concurring). Justice Powell went on to state, "The inquiry for First Amendment purposes is not concerned with economic impact; rather, it looks only to the effect of this ordinance upon freedom of expression." *Id.* Thus, the governmental interest in this ordinance does not relate to the suppression of free expression.

In conclusion, under the *Ward* analysis, the city's picture arcade ordinance is a valid manner restriction of speech under the first amendment.

## II. EVIDENCE WAS INSUFFICIENT TO SUPPORT ISSUANCE OF INJUNCTION

Defendant ABC Books asserts the trial court erred (1) in finding defendant's maintenance of fully enclosed booths constitutes a nuisance and (2) in granting the injunction.

The City of Lincoln, a city of the primary class, possesses statutory authority to sue and suppress nuisances. See Neb. Rev. Stat. § 18-1720 (Reissue 1987). It may make ordinances, bylaws, rules, and regulations not inconsistent with state law for promoting public safety, morals, and welfare of its inhabitants. See Neb. Rev. Stat. § 15-263 (Reissue 1987).

Lincoln Mun. Code § 9.48.010 (1979) provides in part:

> Any room, house, building, structure, or place, and any property kept and used in maintaining the same, where in violation of the ordinances of the City of Lincoln unlawful or illegal acts are committed is hereby declared to be a disorderly house and a public or common nuisance; such unlawful or illegal acts so committed in such disorderly house are hereby declared to be disorderly practices and a public or common nuisance . . . .

In the present case, the evidence established that contrary to § 5.12.175, defendant ABC Books continues to operate its picture arcades with fully enclosed booths. The City of Lincoln successfully prosecuted ABC Books on three separate occasions for violations of the ordinance; however, the convictions have not resulted in the removal of the fully enclosed booths. Furthermore, the evidence at trial established that illicit sexual activity regularly occurs in and around the enclosed booths. Undercover police officers personally

observed instances of sexual solicitations, assaults, and indecent exposures on the premises of the defendant's store.

The city has an interest in seeing that the law is not continually violated. Where an ordinance is openly, publicly, repeatedly, continuously, persistently, and intentionally violated, a public nuisance is created. *State, ex rel. Hunter, v. Omaha Motion Picture Exhibitors Ass'n*, 133 Neb. 89, 274 N.W. 397 (1937); *State, ex rel. Hunter, v. The Araho*, 137 Neb. 389, 289 N.W. 545 (1940).

" ' "[A] court of equity may properly afford injunctive relief where there has been a continuing and flagrant course of violations of the . . . law even though these acts may be subject to criminal prosecution." ' " *State ex rel. Douglas v. Wiener*, 220 Neb. 502, 503, 370 N.W.2d 720, 722 (1985). See, also, *State ex rel. Douglas v. Faith Baptist Church*, 207 Neb. 802, 301 N.W.2d 571 (1981); *State ex rel. Meyer v. Weiner*, 190 Neb. 30, 205 N.W.2d 649 (1973); *State v. Chicago & N. W. Ry. Co.*, 147 Neb. 970, 25 N.W.2d 824 (1947). Furthermore, this court has previously stated:

> "We recognize the general rule that acts punishable by fine will not ordinarily be enjoined. But this rule does not have the force of denying such a remedy in the prevention of public wrongs arising out of repeated violations of a penalty statute which harmfully affects the interests of the public. And this rule does not require that such acts should create a nuisance. Injunction is properly used for the protection of public rights, property, or welfare, whether or not such acts violate a penalty statute and whether or not they constitute a nuisance."

*State ex rel. Meyer v. Weiner, supra* at 33, 205 N.W.2d at 651 (quoting *State v. Chicago & N. W. Ry. Co., supra*).

We find that ABC Books openly, publicly, repeatedly, continuously, persistently, and intentionally violated the city's ordinance and that, therefore, its actions constituted a public nuisance. Consequently, the trial court properly enjoined ABC Books from continuing such violation.

## III. CITY'S REFUSAL TO ISSUE MECHANICAL AMUSEMENT DEVICE PERMITS

Under the Lincoln Municipal Code's chapter 5.12, ABC Books is required to secure an annual permit from the city clerk in order to operate its mechanical amusement devices, i.e., picture arcades. The relevant sections of the chapter provide:

> **5.12.020 Permit required.** No person shall display for use or permit to be used any [mechanical amusement device, e.g., picture arcade] without first securing a permit therefor and paying an occupation tax thereon . . . .
>
> . . . .
>
> **5.12.160 Revocation of permit.** If at any time any permittee, or a managing officer thereof, if the permittee is a corporation, firm, partnership, or association, or the person in charge of or managing the operation of such machines is not of good moral character, or is convicted of violating any of the provisions of this chapter or any laws against gambling, the city council may forthwith revoke such permit.
>
> . . . .
>
> **5.12.190 Expiration of permit.** Each permit shall expire on, and shall be renewed by, the thirty-first (31st) day of May following the date of issuance.

Lincoln Mun. Code §§ 5.12.020, 5.12.160, and 5.12.190 (1986).

The record shows that in 1986 and the preceding years, ABC Books annually applied for and received permits to operate its picture arcades, that is, its fully enclosed video and 8-millimeter film booths. In 1987 and 1988, however, the city clerk refused to issue permits to ABC Books on grounds that ABC Books had been convicted of violating chapter 5.12 and remained in continuous violation thereof. When the city brought this action to have ABC Books permanently enjoined from operating its picture arcades in violation of chapter 5.12, ABC Books counterclaimed by requesting that the city clerk be enjoined from refusing to issue permits to ABC Books. The trial court denied ABC Books' counterclaim. On appeal, ABC Books contends that the trial court erred in failing to issue an injunction against the city clerk.

390

The record shows that ABC Books was convicted three times in 1986 of violating the provisions of chapter 5.12. Further, the record shows that subsequent to its three convictions in 1986, ABC Books continued to operate its picture arcades in violation of chapter 5.12. Consequently, when ABC Books requested permits in 1987 and 1988, the city clerk refused to issue the permits. Under § 5.12.160, a single violation of chapter 5.12 constitutes a ground for revoking a mechanical amusement device permit. The continuous violation of chapter 5.12 constitutes a proper ground for refusing to issue an annual permit. Thus, the trial court properly denied injunctive relief to ABC Books.

The judgment of the district court is in all respects affirmed.

AFFIRMED.