ROBERT L. HOWARD, APPELLANT, V. CITY OF LINCOLN, APPELLEE.
497 N.W.2d 53

Filed March 19, 1993.   No. S-90-720.

Robert Wm. Chapin, Jr., for appellant.

William F. Austin, Lincoln City Attorney, and Dana W. Roper for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, FAHRNBRUCH, and LANPHIER, JJ.

WHITE, J.

Robert L. Howard appeals the district court's dismissal of the action he filed after the City of Lincoln (City) cut weeds on his property. Howard sought damages under 42 U.S.C. § 1983 (1988), alleging that the municipal ordinance which authorized the City to cut the weeds was unconstitutional. We affirm.

In June 1988, Howard, a resident of Lincoln, was notified by the City that the vegetation on his property did not comply with the city ordinances governing weed control. Under the

applicable ordinances (Lincoln Mun. Code §§ 8.80.010 to 8.80.060 (1988)), if a landowner did not comply with trimming requirements, the City could remove the weeds itself, assess the costs to the landowner, and impose a criminal penalty for noncompliance. Howard did not comply with the ordinances following the notice.

On July 8, 1988, various city officials met with Howard at his residence, discussing the violations of the ordinances. Howard later received a second letter from the City demanding compliance. Howard again failed to comply.

On July 29, 1988, the City cut the weeds. Howard then received notice of a city council hearing to assess the costs for trimming the weeds. Howard attended the hearing and testified. The city council assessed costs of $52.41 for removal of the weeds.

Howard then filed an action in the district court, alleging that § 8.80.010 was unconstitutional and seeking damages under § 1983. After trial, the court ruled that the ordinance was not unconstitutional, found that Howard had violated the ordinance, and dismissed the action.

Howard alleges that the district court erred in (1) not finding that § 8.80.010 is unconstitutionally vague; (2) not finding that § 8.80.010 unconstitutionally delegates power from one branch of government to another; and (3) not finding that the City denied Howard's due process rights and violated his civil rights, as guaranteed by the U.S. Constitution and § 1983.

Howard's attacks on the constitutionality of the ordinance are not declaratory in nature, nor can they be, for he has failed to serve the Attorney General with a copy of the proceeding, as required by Neb. Rev. Stat. § 25-21,159 (Reissue 1989). We thus address the challenges as they bear on Howard's claim for damages.

Under § 1983, a suit for redress may be brought against a person who, under color of a state statute or ordinance, subjects the complaining party to a deprivation of his or her constitutional rights, privileges, or immunities. Consequently, to recover § 1983 damages from the City, Howard must show that enforcement of the ordinance violated his constitutional rights.

The constitutionality of a statute or ordinance is a question of law. See *State v. Crowdell*, 234 Neb. 469, 451 N.W.2d 695 (1990). With regard to questions of law, we are obligated to reach a conclusion independent of the decision reached by the trial court. *Dowd v. First Omaha Sec. Corp.*, 242 Neb. 347, 495 N.W.2d 36 (1993).

We also note that when passing on the constitutionality of an ordinance, this court begins with a presumption of validity. Therefore, the burden of demonstrating the constitutional defect rests with the challenger. *City of Lincoln v. ABC Books, Inc.*, 238 Neb. 378, 470 N.W.2d 760 (1991).

Howard first asserts that the city ordinance is vague in that it fails to adequately define which vegetation violates its terms. His argument, however, is less than clear as to how the alleged vagueness violated his rights. Presumably, Howard is alleging that his due process rights were violated because the ordinance enabled the City to cut vegetation that he regarded as useful and then to assess the costs to him.

Section 8.80.010 provides, in relevant part:

> It shall be the duty of every owner of real estate in [Lincoln] to cut and clear, or clear, such real estate, together with one-half (1/2) of the streets and alleys abutting thereon, *of all weeds or worthless vegetation* whenever such *weeds or worthless vegetation* shall extend more than six (6) inches above the ground. Such *weeds or worthless vegetation* shall be cut so as not to extend more than six (6) inches above the ground.

(Emphasis supplied.)

Howard alleges that the ordinance does not define "weeds or worthless vegetation" adequately and that, therefore, the ordinance is unconstitutionally vague. We disagree.

Procedural due process requires that an ordinance supply "(1) a 'person of ordinary intelligence a reasonable opportunity to know what is prohibited' and (2) 'explicit standards for those who apply [it].' " *ABC Books, Inc.*, 238 Neb. at 382, 470 N.W.2d at 764 (quoting *Grayned v. City of Rockford*, 408 U.S. 104, 92 S. Ct. 2294, 33 L. Ed. 2d 222 (1972)). Furthermore, when evaluating an ordinance for vagueness, we do not seek mathematical certainty, but, rather, " ' "flexibility and

reasonable breadth . . . ." ' " *ABC Books, Inc.*, 238 Neb. at 382, 470 N.W.2d at 764.

We encountered a situation strikingly similar to the one presently before us in *Greenwood v. City of Lincoln*, 156 Neb. 142, 55 N.W.2d 343 (1952), *overruled in part,. Brown v. City of Omaha*, 183 Neb. 430, 160 N.W.2d 805 (1968). In *Greenwood*, the plaintiffs sued the City of Lincoln for damages after the city cut the vegetation on the plaintiffs' property—including a number of raspberry bushes which were surrounded by tall weeds and grasses. The city had acted pursuant to an ordinance which required landowners to cut and clear all "weeds and worthless vegetation" from their property. *Id.* at 144, 55 N.W.2d at 344.

Although we directed that the plaintiffs' case be dismissed on grounds of sovereign immunity, we addressed the language of the applicable ordinance. In doing so, we repeated the following: " 'The word "weed" has a common, everyday, meaning to the mind of every man. . . . [T]he right of the defendant to grow weeds upon his city lot is subordinate to the right of society that he shall not do so, because he would thereby endanger the health of others. . . .' " *Id.* at 148, 55 N.W.2d at 346 (quoting *City of St. Louis v. Galt*, 179 Mo. 8, 77 S.W. 876 (1903)).

We are similarly convinced today that the language "weeds or worthless vegetation" carries a common enough meaning that it does not violate the constitutional rights of Lincoln's citizenry. As the City correctly points out, if the ordinance listed every type of prohibited vegetation by its scientific name, the ordinance would be extremely confusing to citizens—save, perhaps, horticulturalists. And while enforcement of the ordinance ultra vires would be subject to attack, potential for abuse does not render the ordinance unconstitutionally vague. See Neb. Rev. Stat. § 15-268 (Reissue 1991) (providing the statutory grant of power for the weed ordinance).

The ordinance provides definitions that are not confusing to the average citizen. Thus, any "vagueness" in the language does not work a constitutional violation on Howard. Likewise, the ordinance adequately instructs city officials with regard to their duties. See §§ 8.80.010 and 8.80.020.

Courts in other jurisdictions have also found that ordinances or statutes may, and sometimes must, describe the targets of their prohibition in general terms. See, e.g., *Grayned v. City of Rockford*, 408 U.S. at 108 (holding that an ordinance which prohibited any noise which " 'tends to disturb the peace' " of a school was not unconstitutionally vague); *Hubenthal v. County of Winona*, 751 F.2d 243 (8th Cir. 1984) (holding that an ordinance prohibiting "junkyards" was not unconstitutionally vague); *Lundquist v. City of Milwaukee*, 643 F. Supp. 774 (E.D. Wis. 1986) (holding that an ordinance prohibiting "weeds" over 1 foot in height was not unconstitutionally vague); *Buhler v. Stone*, 533 P.2d 292 (Utah 1975) (noting that legislation often must use general terms when describing certain conditions).

Lincoln's weed ordinance must also speak in somewhat general terms. Mere generality does not render the ordinance unconstitutionally vague. Howard's first assignment of error is without merit.

Howard next argues that the ordinance violates the Nebraska Constitution because it is the result of an improper delegation of authority from the Legislature and because it allows the City to improperly delegate certain powers to its departments. Again we disagree.

We first note that Neb. Const. art. II, § 1, which distributes state governmental powers to the legislative, judicial, and executive branches, does not apply to the governing bodies of municipalities. See *State v. Ure*, 91 Neb. 31, 135 N.W. 224 (1912). We thus concern ourselves only with Howard's argument that the Legislature inappropriately delegated nonlegislative powers to the City.

In his only delegation argument sufficiently clear to address, Howard argues that because § 15-268 empowers the City to assess the costs of cutting the weeds to the landowner, it confers a nonlegislative power on the City, the power to hear assessment proceedings, and therefore violates article II, § 1. Howard's argument is untenable.

While it is true that the Legislature may not constitutionally delegate powers that it does not possess, municipalities clearly may, via the police power, protect the public health through

ordinances that operate within legislative limits. See, *McCrea v. Cunningham*, 202 Neb. 638, 277 N.W.2d 52 (1979); *Whelan v. Daniels*, 94 Neb. 642, 143 N.W. 929 (1913). The control of weeds within the corporate limits of a municipality is an acceptable exercise of this power. *Greenwood v. City of Lincoln*, 156 Neb. 142, 55 N.W.2d 343 (1952), *overruled in part*, *Brown v. City of Omaha*, 183 Neb. 430, 160 N.W.2d 805 (1968). Moreover, under the police power, the municipality may validly assess the costs of abating health hazards against the property where the hazard lies. See *Patrick v. City of Omaha*, 1 Neb. (Unoff.) 250, 95 N.W. 477 (1901). See, also, *Paterson v. Fargo Realty Inc.*, 174 N.J. Super. 178, 187, 415 A.2d 1210, 1214 (1980) (stating that there is "no constitutional impediment to making a landowner personally responsible for the reasonable cost of abating hazardous conditions existing on his property").

In *Bosselman, Inc. v. State*, 230 Neb. 471, 432 N.W.2d 226 (1988), we noted that, with regard to legislative delegations to local governing bodies, " ' "[w]here the Legislature has provided reasonable limitations and standards for carrying out the delegated duties, there is no unconstitutional delegation of legislative authority." ' " *Id*. at 476-77, 432 N.W.2d at 230 (quoting *Ewing v. Scotts Bluff Cty. Bd. of Equal.*, 227 Neb. 798, 420 N.W.2d 685 (1988)). When viewed in its entirety, § 15-268 adequately provides limitations and standards for the carrying out of the statute's duties.

We first note that under § 15-268, cities of the primary class "*may*" implement the provisions of the section. (Emphasis supplied.) If a city so chooses, the statutory duties are clearly laid out. The city may require removal of "weeds and worthless vegetation," which language, as we have previously discussed, provides sufficiently clear guidance for local officials. The statute also describes the events to take place in the event of noncompliance, including assessing the costs of removal against the property. The statute provides reasonable standards and limitations for cities which choose to enact weed-related ordinances. Thus, the statute does not violate constitutional standards regarding delegations of legislative power and does not violate Howard's constitutional rights.

We finally turn to Howard's argument that the City's actions violated procedural due process, as guaranteed by U.S. Const. amend. XIV and Neb. Const. art. I, § 3. Howard alleges that he was deprived of property—his vegetation and the $52.41 assessment—without being given a fair hearing before each deprivation.

The protections of procedural due process attach when there has been a deprivation of a significant property interest. See *Boddie v. Connecticut*, 401 U.S. 371, 91 S. Ct. 780, 28 L. Ed. 2d 113 (1971). If such an interest is shown, due process requires notice and an opportunity to be heard that is " 'appropriate to the nature of the case.' " 401 U.S. at 378. See, also, *Goldberg v. Kelly*, 397 U.S. 254, 90 S. Ct. 1011, 25 L. Ed. 2d 287 (1970); *Kirshen v. Kirshen*, 227 Neb. 479, 418 N.W.2d 558 (1988). Assuming, arguendo, that Howard's interest in the weeds was significant enough to invoke due process protections, we address the sufficiency of the process he was afforded.

After a notice demanding compliance was sent, several city officials met with Howard at his home to discuss the vegetation. Among the attendees were Howard, the director of public works, the city weed inspector, and a party who transcribed the discussion. Howard was allowed to state his reasons for noncompliance at the meeting. Six days after the meeting, the city officials notified Howard of their decision, stating that they would cut the weeds. Howard took no action to enjoin the efforts.

Howard argues that he should have been afforded a more formal hearing before the weeds were cut. His contention is without merit. All that is required is a meaningful opportunity to be heard, in a manner appropriate to the case. *Boddie, supra*. Howard received that process.

Depending on the importance of the interests involved, the formality and procedure of the hearing may vary. *Id*. Howard's interest in the weeds simply did not merit a full evidentiary hearing. See *Sobocinski v. City of Williamsport*, 13 Pa. Commw. 425, 319 A.2d 697 (1974). See, also, *Pope v. City of Houston*, 559 S.W.2d 905 (Tex. Civ. App. 1977).

We do not intimate that the City could cut any type of

vegetation without providing a more formal hearing. However, the vegetation that was trimmed more closely resembled a briar patch than a bed of prize roses. As verified by an agronomist holding a Ph.D., 17 forms of vegetation found on Howard's property were described as "weeds" in a text on the subject and apparently grew unchecked and randomly. Although Howard did state that he had eaten the produce of some of the plants, the record is devoid of any evidence that Howard cultivated the vegetation or that it could be ascribed value significant enough to warrant a more formal hearing than Howard received.

At the "pre-cutting" meeting, Howard was asked why he determined that the vegetation had value. Howard's answer failed to import any worth to the vegetation other than as "ground cover." The City relied on the minutes of that meeting in deciding whether to proceed with the cutting. The record indicates that Howard was given sufficient procedural protections before his weeds were cut; due process was not offended. See, *Boddie, supra*; *Goldberg, supra*.

We now turn to the $52.41 assessment. It is clear that the assessment constituted a significant property interest and thus invoked due process protections. In *Kirshen*, 227 Neb. at 481, 418 N.W.2d at 560, we stated: "Due process has been held to require that adjudication be preceded by notice and an opportunity to be heard which is fair in view of the circumstances and conditions existent at the time."

Howard does not contest the sufficiency of his notice; he received two notices before the weeds were cut and another before the assessment hearing. His arguments therefore focus on the fairness of the assessment hearing. He points out that in 1987 he was found not guilty in a criminal proceeding based on noncompliance with the weed ordinance. Howard reasons that because he was found not guilty after a trial in that action and because the city council hearing resulted in an assessment of costs to him, the city council hearing was not fair. Howard's argument is meritless.

Although Howard was entitled to due process, we need not determine whether the assessment hearing afforded him such process. In *In re Water Appropriation Nos. 442A, 461, 462, and 485*, 210 Neb. 161, 166, 313 N.W.2d 271, 275 (1981), we stated:

" 'One cannot be said to be deprived of his property without due process of law *so long as he has recourse to the courts for the protection of his rights.* . . .' " (Emphasis supplied.) (Quoting *Dawson County Irrigation Co. v. McMullen*, 120 Neb. 245, 231 N.W. 840 (1930).) See, also, *Koepp v. Jensen*, 230 Neb. 489, 432 N.W.2d 237 (1988). Howard had such recourse, yet chose not to exercise it.

Under Neb. Rev. Stat. § 15-1201 (Reissue 1991), Howard was entitled to appeal the city council's ruling; he did not. Had he desired a more indepth hearing, such an avenue was available at the district court level. See *id.* He should not be heard to complain now about the inadequacies of the assessment hearing.

Furthermore, Howard received a full hearing when he brought this action for damages. In its order, the district court specifically found that the assessment was not a penalty and was intended only to recoup the costs of cutting the weeds. Nothing in the record causes us to disagree with the court on this point.

The district court correctly found that § 8.80.010 was not unconstitutionally vague and that the ordinance did not result from, or work, an unconstitutional delegation of powers. The court was also correct in finding that the City's actions did not deprive Howard of due process. We affirm the judgment of the district court in all respects.

AFFIRMED.