JOHN DUDLEY PATRICK WESTRUP ANDREWS, AS NOMINEE FOR AND ON BEHALF OF CERTAIN UNDERWRITING SYNDICATES AT LLOYD'S, LONDON, APPELLANT AND CROSS-APPELLEE, V. RALPH SCHRAM, APPELLEE AND CROSS-APPELLANT.
JOHN DUDLEY PATRICK WESTRUP ANDREWS, AS NOMINEE FOR AND ON BEHALF OF CERTAIN UNDERWRITING SYNDICATES AT LLOYD'S, LONDON, APPELLANT AND CROSS-APPELLEE, V. THOMAS R. SPAHN, APPELLEE AND CROSS-APPELLANT.

562 N.W.2d 50

Filed April 18, 1997.    Nos. S-95-586, S-95-587.

Robert C. Evans and Gordon P. Serou, Jr., of Evans & Company, for appellant.

Rodney M. Confer, of Knudsen, Berkheimer, Richardson & Endacott, for appellees.

WHITE, C.J., CAPORALE, WRIGHT, CONNOLLY, and GERRARD, JJ., and ENSZ, D.J., and BLUE, D.J., Retired.

WHITE, C.J.

John Dudley Patrick Westrup Andrews, as nominee for and on behalf of certain underwriting syndicates at Lloyd's, London (Lloyd's), appeals the finding of the district court for Lancaster County that the evidence was insufficient to support a prejudgment attachment against Ralph Schram and Thomas R. Spahn in their individual capacities under Neb. Rev. Stat. § 25-1001 et seq. (Reissue 1995). Spahn and Schram each cross-appeal, arguing that the district court erred in refusing to discharge the attachments and garnishments pending this appeal because § 25-1001 et seq. violates the Due Process Clause of the 14th Amendment to the U.S. Constitution. We reverse.

Schram is the founder and president of Schram Financial Services, Inc. (SFS), and Spahn was the treasurer of SFS at all times relevant to this case. In late 1992, Lloyd's and SFS entered into certain agreements through which Lloyd's authorized SFS to bind insurances and handle premiums and other funds on Lloyd's behalf. The agreements covered the period from November 1992 to October 1993 and provided in pertinent part that the binding of insurances under the agreements was the responsibility of Schram, that SFS had to maintain separate bank accounts to be used exclusively for moneys from insurance transactions on Lloyd's behalf, that SFS was to receive commissions of fixed percentages for the binding of these insur-

ances, and that SFS was liable for all charges and expenses incurred in its operations. The parties entered into agreements identical to these in all relevant provisions in 1994.

On April 4, 1995, Lloyd's filed two separate petitions against Schram and Spahn, alleging that Schram and Spahn as employees and officers of SFS aided and abetted SFS' conversion of insurance premiums due Lloyd's. On this same date, after posting a bond, Lloyd's obtained ex parte orders attaching Schram's and Spahn's real and personal property and garnishing Spahn's bank accounts and the retainer in the form of a $40,000 treasury bill that Schram signed over to his attorney.

Schram and Spahn requested a hearing on the attachments and garnishments pursuant to § 25-1041 to determine whether the affidavits submitted by Lloyd's set forth reasonable cause establishing grounds to attach and garnish their property. The hearing was held on April 18, 1995, at which affidavits and the deposition testimony of Schram and Spahn were submitted.

According to Spahn's deposition testimony, pursuant to the agreements between SFS and Lloyd's, SFS maintained two separate accounts to hold funds on Lloyd's behalf. All funds received by SFS on behalf of Lloyd's were initially routed through one of these two accounts. However, rather than withdrawing solely the amount of SFS' commission as set forth in the agreements, Spahn testified that as treasurer, he wrote checks on Schram's authority in even amounts whenever necessary to pay SFS' operating expenses. Spahn and Schram both testified that the amounts withdrawn directly correlated with the operating expenses of SFS and had no mathematical correlation to the commissions due SFS from Lloyd's. Spahn testified that the transfers from Lloyd's trust accounts to SFS' operating accounts were not reflected in SFS' financial statements. Spahn stated, "We showed just what the true commissions were, not what was transferred." In Spahn's deposition, he admitted that he knew the funds in those accounts belonged to Lloyd's at the time he withdrew funds from those accounts to pay the operating expenses. Both Schram and Spahn testified that they were the only two parties who knew about this method of withdrawing funds and that Schram had not received authority from Lloyd's to transfer the funds in this manner.

The record indicates that SFS operated at a loss of $2,211 in 1991, $154,854 in 1992, and $219,855.53 in 1993. According to Spahn's deposition testimony, some $456,961.84 collected on behalf of Lloyd's was subsequently withdrawn to cover SFS' operating expenses. At the time of the filing of the petitions in this case, the record indicates that SFS had a total of $13,985.35 in all accounts.

On April 27, 1995, the district court vacated the attachments and garnishments. The court stated in its order:

> The affidavits submitted by [Lloyd's] and the deposition testimony of Ralph Schram and Thomas R. Spahn show that funds collected on behalf of [Lloyd's] by SFS were to be held in a trust account and remitted periodically to [Lloyd's] and that such funds were used by SFS, without authority of [Lloyd's], to pay general operating expenses of SFS. Certainly, there is evidence of a fiduciary relationship between SFS and [Lloyd's], that SFS likely has converted the trust funds to its own accounts and that such conversion is strongly indicative of fraud on the part of SFS.

> However, the action here is against the individual employee-officers of SFS on a theory of "aiding and abetting." This court finds that the evidence is insufficient to support a prejudgment attachment against these defendants in their individual capacity under [§] 25-1001.

Pursuant to § 25-1047, the district court allowed Lloyd's to appeal its discharge of the attachments and garnishments and ordered that upon the filing of $25,000 bonds in each case, the attachments and garnishments were to remain in effect during this appeal. Lloyd's posted a supersedeas bond in the amount of $25,000 in only Schram's case.

Lloyd's timely filed notices of appeal in both cases. We sustained Schram's and Spahn's petitions to bypass due to the presence of a constitutional question, removed both cases to our docket, and consolidated them for the purposes of oral argument and disposition.

On appeal, Lloyd's alleges that the district court erred in finding insufficient evidence to support the attachments and garnishments against Schram and Spahn in their individual

capacities. Schram and Spahn cross-appeal and argue that (1) § 25-1001 et seq. is facially unconstitutional and violates the Due Process Clause of the 14th Amendment to the U.S. Constitution because the statutes (a) allow the defendant's property to be seized without a prior hearing, (b) permit seizure of property without considering the factors set forth in *Connecticut v. Doehr*, 501 U.S. 1, 111 S. Ct. 2105, 115 L. Ed. 2d 1 (1991), and (c) allow seizure without considering the likelihood of the success of the underlying claim; (2) § 25-1001(8) unconstitutionally violates the Due Process Clause of the 14th Amendment because on its face, it allows seizure of property based on an allegation that Schram and Spahn fraudulently contracted or incurred the underlying claim; and (3) § 25-1047 on its face violates the Due Process Clause of the 14th Amendment by continuing the seizure of property pending appeal after a determination was made by a court that the seizure was improper.

An order granting or denying a motion to discharge an attachment based upon conflicting evidence will not be reversed unless clearly wrong. *J. R. Watkins Co. v. Sorenson*, 166 Neb. 364, 88 N.W.2d 902 (1958).

Whether a statute is constitutional is a question of law; accordingly, the Nebraska Supreme Court is obligated to reach a conclusion independent of the decision reached by the trial court. *Kuchar v. Krings*, 248 Neb. 995, 540 N.W.2d 582 (1995); *CenTra, Inc. v. Chandler Ins. Co.*, 248 Neb. 844, 540 N.W.2d 318 (1995). A statute is presumed to be constitutional, and all reasonable doubts will be resolved in favor of its constitutionality. *State ex rel. Shepherd v. Neb. Equal Opp. Comm.*, 251 Neb. 517, 557 N.W.2d 684 (1997); *Ponderosa Ridge LLC v. Banner County*, 250 Neb. 944, 554 N.W.2d 151 (1996).

In its sole assignment of error on appeal in both cases, Lloyd's argues that the district court erred in finding insufficient evidence to support the attachments and garnishments against Schram and Spahn. We agree.

At a hearing on a defendant's motion to quash an attachment, the burden is on the plaintiff to sustain by a preponderance of the evidence one or more of the grounds of attachment claimed. *Ceres Fertilizer, Inc. v. Beekman*, 205 Neb. 768, 290 N.W.2d 199 (1980). An order granting or denying a motion to discharge

an attachment based upon conflicting evidence will not be reversed unless clearly wrong. *J. R. Watkins Co., supra.*

Lloyd's alleges that the attachments and garnishments as to Schram and Spahn were justified under § 25-1001(8), which allows an attachment where the defendant has "fraudulently contracted the debt or incurred the obligation for which suit is about to be or has been brought." At the hearing to discharge the attachments and garnishments, the district court found that while the evidence was strongly indicative of fraud on SFS' part, the evidence was insufficient to support attachments against Schram and Spahn in their individual capacities. We disagree because we find that Schram and Spahn were subagents of SFS, which was an agent of Lloyd's; that Schram and Spahn as subagents had a fiduciary duty toward Lloyd's; and that the record demonstrates by a preponderance of the evidence that Schram and Spahn fraudulently contracted the debt at issue in the underlying case.

Agency is the fiduciary relationship which results from the manifestation of consent by one person to another that the other shall act on his or her behalf and subject to his or her control, and the consent of the other to so act. *Equilease Corp. v. Neff Towing Serv.*, 227 Neb. 523, 418 N.W.2d 754 (1988). An agent and a principal are in a fiduciary relationship. *Grone v. Lincoln Mut. Life Ins. Co.*, 230 Neb. 144, 430 N.W.2d 507 (1988). A subagent is a person appointed by an agent empowered to do so, to perform functions undertaken by the agent for a principal, but for whose conduct the agent agrees with the principal to be primarily responsible. Restatement (Second) of Agency § 5 (1958). See *Equilease Corp., supra.* A subagent stands in a fiduciary relation to a principal and is subject to all the liabilities of an agent to a principal, except liability dependent upon the existence of a contractual relation between them. Restatement, *supra*, comment *d*. An agent has an obligation to disclose all facts material to transactions with a principal, and failure to do so constitutes fraud. *Grone, supra.*

The record is clear that in 1992, SFS contracted with Lloyd's to bind insurances and handle premiums and other funds on Lloyd's behalf, agreed that the binding of insurances under the agreements would be the responsibility of Schram, and agreed

that SFS would use its best efforts to legally and properly handle the insurances bound under the contract. Through the contract, Lloyd's manifested its consent that SFS should act on its behalf to bind insurances and handle funds. In the course of contracting, SFS as Lloyd's agent gave Schram primary responsibility as SFS' subagent to bind insurance; SFS also gave Spahn as treasurer primary authority in maintaining the checking accounts, writing the checks, and preparing SFS' financial statements. Thus, the record establishes that Schram and Spahn were subagents of SFS, that SFS was an agent of Lloyd's, and that SFS as an agent of Lloyd's and Schram and Spahn as subagents of SFS had certain fiduciary obligations to Lloyd's.

The evidence presented at the hearing on the motion to discharge the attachments and garnishments also clearly establishes by a preponderance of the evidence that at the time of contracting in 1994, neither Schram nor Spahn disclosed to Lloyd's that SFS through Schram and Spahn was withdrawing funds in excess of the terms for commissions set forth in the contract, that those funds were being placed in SFS' operating accounts, that the money was subsequently used to pay SFS' expenses, that Schram and Spahn knew the funds were being withdrawn in derogation of the contract and in defiance of Lloyd's rights to the funds, that Schram and Spahn had no authority to so appropriate these funds and knew that they lacked this authority, and that both knew that this was an activity in which they had engaged throughout 1992 and 1993 and were engaging at the time of contracting in 1994.

Based on the affidavits submitted at the hearing to discharge the attachments and garnishments in this case, we find that Lloyd's clearly met its burden of proving by a preponderance of the evidence that Schram and Spahn as subagents, and in their individual capacities, fraudulently contracted the debt or incurred the obligation in this matter and that, consequently, the district court's orders discharging the attachments and garnishments were clearly erroneous. Thus, we find meritorious Lloyd's assignment of error.

However, this does not end our discussion in this case. On cross-appeal, Schram and Spahn argue that Nebraska's statutory attachment and garnishment scheme unconstitutionally violates

the Due Process Clause of the 14th Amendment to the U.S. Constitution. Specifically, Schram and Spahn argue that § 25-1001 et seq. violates the Constitution because the statutes allow Schram's and Spahn's property to be seized without a prior hearing, do not consider the factors set forth in *Connecticut v. Doehr*, 501 U.S. 1, 111 S. Ct. 2105, 115 L. Ed. 2d 1 (1991), and allow seizure without considering the likelihood of the success of the underlying claim; that § 25-1001(8) is unconstitutional because it allows seizure of property based on the allegation that Schram and Spahn fraudulently contracted or incurred the underlying claim; and that § 25-1047 unconstitutionally continues the seizure of property pending appeal after a determination was made by a court that the seizure was improper. We disagree with each of these arguments.

The U.S. Supreme Court's opinion in *Doehr* is dispositive of all the constitutional claims in this case, and thus these claims will be addressed together in light of the requirements enumerated in *Doehr*. The Court in *Doehr* set forth the relevant inquiry in determining whether a state's prejudgment attachment statutes are violative of due process. The Court stated that in evaluating whether the statutory scheme comports with due process, a court must balance the following factors:

> first, consideration of the private interest that will be affected by the prejudgment measure; second, an examination of the risk of erroneous deprivation through the procedures under attack and the probable value of additional or alternative safeguards; and third . . . principal attention to the interest of the party seeking the prejudgment remedy, with, nonetheless, due regard for any ancillary interest the government may have in providing the procedure or forgoing the added burden of providing greater protections.

501 U.S. at 11.

The first element to be evaluated in determining whether Nebraska's statutory attachment and garnishment scheme comports with due process is the private interest that will be affected by the prejudgment measure. The Court in *Doehr* stated that "[w]ithout doubt, state procedures for creating and enforcing attachments . . . 'are subject to the strictures of due process.'"

501 U.S. at 12. Both Lloyd's and Schram and Spahn agree, as do we, that Schram's and Spahn's property interests should be accorded due process both at the preattachment phase and on appeal.

The second element involves an examination of the risk of erroneous deprivation through the procedures under attack. In *Doehr*, the Court struck down Connecticut's attachment scheme because it allowed for the attachment of real estate without prior notice or hearing, a showing of extraordinary circumstances, or the posting of a bond in a case involving the relatively complicated issue of assault and battery. The Court stated, "Unlike determining the existence of a debt or delinquent payments, the issue [in this case] does not concern 'ordinarily uncomplicated matters that lend themselves to documentary proof.'" 501 U.S. at 14. The Court noted that the absence of a posted bond, a requirement for a showing of extraordinary circumstances, and prior notice or hearing left a dearth of safeguards supplied by the Connecticut statutory scheme so as to reduce the risk of erroneous deprivation.

This case involves a different factual scenario than that presented in *Doehr* and, consequently, a much more minimal risk that Schram and Spahn will be erroneously deprived of their property. First, Lloyd's claims are much more readily susceptible to documentary proof than is an assault and battery case. Second, Nebraska's statutory scheme provides for several of the specific safeguards noted with approval by the Court in *Doehr*: § 25-1001 requires that one of eight specific exigent circumstances exist before property may be attached or garnished, § 25-1002 requires that a judge find reasonable cause exists to attach the property based on fact-specific affidavits submitted at the hearing, § 25-1003 requires that the plaintiff post a bond prior to the issuance of the order of attachment, and §§ 25-1040 and 25-1041 give the defendant the right at any time prior to judgment to move to discharge the attachment and have a hearing on the motion. In fact, the Court in *Doehr* referenced the Nebraska statutory scheme with approval as one that provided appropriate safeguards where the statutes allowed property to be attached without a prior hearing.

Schram's argument that § 25-1047 violates due process because it allows for the continued attachment of his property during the pendency of appeal is similarly unconvincing when examined under this second prong of the *Doehr* test. While § 25-1047 by its specific language allows an appeal of an order of discharge in every case, it allows continued attachment of the property at issue in only those instances in which the plaintiff posts a bond to protect the defendant from any damages suffered in the event that the order of discharge is affirmed on appeal. The defendant is, thus, adequately protected, and his or her risk of erroneous deprivation is minimal.

The third element set forth in *Doehr* involves the principal attention to the interest of the party seeking the prejudgment remedy with due regard for any ancillary interest the government may have in providing the procedure or forgoing the added burden of providing greater protections. In *Doehr*, there was no evidence of purportedly heightened threats to the plaintiff's interests (exigent circumstances) to indicate that Doehr was about to transfer or encumber his real estate so as to justify a prehearing attachment. The Court noted that the Connecticut provision, by failing to provide a preattachment hearing without at least a showing of some exigent circumstances, clearly fell short of the demands of due process.

Here, the Nebraska statutory scheme requires that one of the eight exigent circumstances listed in § 25-1001 must be demonstrated prior to attachment, as noted above. Additionally, Schram's and Spahn's alleged fraudulent conversions seriously depleted SFS' assets, and Schram pledged what is apparently his only valuable asset—the $40,000 treasury bond—to his attorney, thus rendering it inaccessible and unprotected absent the garnishment proceedings involved in this case.

As well, Lloyd's interest in continuing the attachment against Schram's property during the pendency of the appeal of the district court's order of discharge is significant. In situations such as this where the appellate court finds that the lower court erroneously issued the order of discharge, a discharge of the attachment during appeal could result in the plaintiff's loss of an asset of significant value. The presence of the required bond protects

Schram from any significant harm in that an affirmance on appeal would not only discharge the attachment as to his assets but would also allow him to receive damages for the wrongful attachment.

While the Court in *Doehr* stated that any given exigency requirement alone would not necessarily protect a statutory attachment scheme from due process challenges, we find that this requirement in our statutes, in conjunction with the bond, affidavit, and discharge hearing provisions, does comply with due process under the 14th Amendment to the U.S. Constitution. Schram's and Spahn's assignments of error in this regard on cross-appeal are without merit.

Because we find that the trial court was clearly wrong in finding insufficient evidence to support the attachments and garnishments under § 25-1001(8) and that the statutory attachment and garnishment scheme does not violate the Due Process Clause of the 14th Amendment to the U.S. Constitution, we reverse the district court's orders of discharge.

REVERSED.