KIM TETERS, APPELLEE, CROSS-APPELLANT, AND CROSS-APPELLEE, V.
SCOTTSBLUFF PUBLIC SCHOOLS, A POLITICAL SUBDIVISION AND
NONPROFIT CORPORATION OF THE STATE OF NEBRASKA, APPELLEE,
CROSS-APPELLANT, AND CROSS-APPELLEE, AND KIWANIS CLUB OF
SCOTTSBLUFF, NEBRASKA, A NONPROFIT CORPORATION DOING
BUSINESS AS CAMP KIWANIS, APPELLANT AND CROSS-APPELLEE.
592 N.W. 2d 155

Filed April 9, 1999.    No. S-96-063.

Julie A. Moran, and, on brief, Brian D. Nolan, of Hansen, Engles & Locher, P.C., for appellant.

Paul W. Snyder, of The Van Steenberg Firm, P.C., for appellee Teters.

John R. Hoffert, of Knudsen, Berkheimer, Richardson & Endacott, for appellee Scottsbluff Public Schools.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, McCORMACK, and MILLER-LERMAN, JJ., and MERRITT, D.J.

McCORMACK, J.

This is a negligence action brought by Kim Teters against Scottsbluff Public Schools (the School) and the Kiwanis Club of Scottsbluff (Kiwanis) for injuries she sustained at Kiwanis' recreational facility, Camp Kiwanis. We affirm in part, and in part reverse and remand with directions.

## BACKGROUND

Teters was injured in 1991 while acting as a parent supervisor at an outdoor education program sponsored by the School. The School held the program at Camp Kiwanis, an outdoor recreation facility rented to the School by Kiwanis on a weekend basis. During the 2-day program, students participated in various outdoor activities, including canoeing, archery, and hiking. Teters, whose daughter was in the sixth grade at Bluffs Middle School in Scottsbluff, attended the program with her daughter following the School's request for parent volunteers.

Teters was injured while using part of the camp's obstacle course known as the slide-for-life. The slide was an apparatus that allowed its user to slide down a cable while holding onto a pulley. Teters lost her grip on the pulley and fell 15 to 20 feet to the ground when the stitching in the slide's safety harness failed. As a result, Teters suffered serious injury.

Teters brought a negligence action against the School and Kiwanis. At trial, the jury found generally for Teters in her action against Kiwanis and awarded her $66,000 in damages. The trial judge, trying the case against the School under the Political Subdivisions Tort Claims Act, also found in favor of Teters and held the School and Kiwanis jointly and severally

liable for the damages determined by the jury. The trial judge found that neither the School nor Kiwanis could invoke the protection of Nebraska's Recreation Liability Act (Act), Neb. Rev. Stat. § 37-1001 et seq. (Reissue 1993). Both Kiwanis and the School appealed to the Nebraska Court of Appeals.

On appeal, Kiwanis and the School argued that they were protected by the Act. The Court of Appeals held that Kiwanis fell under the Act's protection because Kiwanis was the owner of the land for purposes of the Act, the land was being used for recreational purposes under the broad definition found in the Act, the money paid by the School to Kiwanis was a rental rather than a charge, and Camp Kiwanis was open to the public without charge. See *Teters v. Scottsbluff Public Schools*, 5 Neb. App. 867, 567 N.W.2d 314 (1997).

The Court of Appeals further held that the School was subject to the common-law liability analysis because during its "ownership" of Camp Kiwanis it did not hold the land open to the public. However, the School, as a temporary lessee, did not owe Teters a duty to inspect for or warn of latent defects in the safety equipment used with the slide-for-life. *Id.*

The decision of the Court of Appeals was affirmed by an equally divided court without opinion in March 1998. The court, sitting with six members due to a recusal, was equally divided. The court did not reach Teters' constitutional arguments and scheduled this rehearing to address those arguments. Teters challenges as vague the portions of the Act exempting "rental paid" from the definition of a "charge" for the use of land, and defining "recreational purposes."

The Legislature has since renumbered the Act, and for clarity we will refer to the new section numbers. The former § 37-1004 is now Neb. Rev. Stat. § 37-733 (Reissue 1998), § 37-1005 is now Neb. Rev. Stat. § 37-734 (Reissue 1998), and § 37-1008 is now Neb. Rev. Stat. § 37-729 (Reissue 1998).

## ASSIGNMENTS OF ERROR

Teters assigns as error that (1) §§ 37-734 and 37-729(4) are unconstitutionally vague in that they insufficiently define rental and fail to distinguish a rental from a charge, (2) the Court of Appeals incorrectly characterized the payment scheme between

Kiwanis and the School as rental rather than a charge, (3) the phrase "or otherwise using land for purposes of the user" renders the definition of recreational purposes in § 37-729(3) unconstitutionally vague, and (4) the Court of Appeals incorrectly found that Teters and the School were using the land for recreational purposes as defined in § 37-729(3).

## STANDARD OF REVIEW

When reviewing a question of law, an appellate court reaches a conclusion independent of the lower court's ruling. *Hoiengs v. County of Adams*, 254 Neb. 64, 574 N.W.2d 498 (1998); *Tapp v. Blackmore Ranch*, 254 Neb. 40, 575 N.W.2d 341 (1998).

Whether a statute is constitutional is a question of law; accordingly, the Nebraska Supreme Court is obligated to reach a conclusion independent of the decision reached by the court below. *Ploen v. Union Ins. Co.*, 253 Neb. 867, 573 N.W.2d 436 (1998); *Andrews v. Schram*, 252 Neb. 298, 562 N.W.2d 50 (1997).

A statute is presumed to be constitutional, and all reasonable doubts will be resolved in favor of its constitutionality. *Andrews v. Schram, supra; State ex rel. Shepherd v. Neb. Equal Opp. Comm.*, 251 Neb. 517, 557 N.W.2d 684 (1997). See *Ploen v. Union Ins. Co., supra.* The burden of establishing the unconstitutionality of a statute is on the one attacking its validity. *Ponderosa Ridge LLC v. Banner County*, 250 Neb. 944, 554 N.W.2d 151 (1996). See, *Ploen v. Union Ins. Co., supra; Andrews v. Schram, supra.*

## ANALYSIS

Teters' first assignment of error is that § 37-734 of the Act is unconstitutional because of vagueness in the term "rental paid," especially as it interacts with the term "charge" defined in § 37-729(4). Section 37-734 states:

> Nothing in sections 37-729 to 37-736 limits in any way any liability which otherwise exists . . . for injury suffered in any case where the owner of land *charges* the person or persons who enter or go on the land. *Rental paid* by a group, organization, corporation, or the state or federal government shall not be deemed a charge made by the owner of the land.

(Emphasis supplied.) Section 37-729(4) defines a charge as "the amount of money asked in return for an invitation to enter or go upon the land." Neither rental nor rent is explicitly defined in the Act.

In order to survive a vagueness challenge, a statute must (1) give adequate notice to citizens, such that a person of ordinary intelligence has a reasonable opportunity to know what is prohibited or required, and (2) supply adequate standards to prevent arbitrary enforcement, such that there are explicit standards for those who apply it. *City of Lincoln v. ABC Books, Inc.*, 238 Neb. 378, 470 N.W.2d 760 (1991). Another wording of the same test states that a statute must not forbid or require the doing of an act in terms so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application. *State ex rel. Douglas v. Herrington*, 206 Neb. 516, 294 N.W.2d 330 (1980). Statutes are to be evaluated under these standards using principles of flexibility and reasonable breadth. *City of Lincoln v. ABC Books, Inc., supra.*

Nebraska's Act is closely modeled upon a model act promulgated by the Council of State Governments entitled "Public Recreation on Private Lands: Limitations on Liability." 24 Council of State Governments, Suggested State Legislation 150 (1965). A comparison between the Act and the model act, §§ 5 and 6, reveals that in adopting the Act, the Legislature modified one but not the other of a matched set of provisions dealing with the leasing of recreational lands to the state or political subdivisions.

Both acts define a charge. The model act at § 2(d) states that a charge is "the admission price or fee asked in return for invitation or permission to enter or go upon the land." *Id.* at 151. Nebraska's Act defines a charge as "the amount of money asked in return for an invitation to enter or go upon the land." § 37-729(4).

Similarly, both acts relieve landowners from common-law liability when land is leased to the state, unless otherwise agreed in writing. See, § 37-733; 24 Council of State Governments, *supra.* The model act also includes political subdivisions within § 5. 24 Council of State Governments, *supra.*

Most relevant is the difference in language surrounding the rental-paid exception itself. The model act at § 6(b) subjects owners of land to common-law liability when the landowner

> charges the person or persons who enter or go on the land for the recreational use thereof, except that in the case of land leased to the state or a subdivision thereof, any consideration received by the owner for such lease shall not be deemed a charge within the meaning of this section.

*Id.* at 151. Nebraska's Act also imposes common-law liability when the landowner charges for the use of the land, but then states that "[r]ental paid by a group, organization, corporation, or the state or federal government shall not be deemed a charge made by the owner of the land." § 37-734.

In the model act, the terms used in the various sections remain constant and consistent, and it is quite obvious why each part is there and what it does. Section 5 of the model act exempts from common-law liability owners of land leased to the state or a subdivision thereof for recreational purposes, and § 6 then states that a landowner will be liable under common-law principles if he or she charges for the use of the land. Recognizing that rental payments under a lease would fall within the definition of a charge, the model act specifies that consideration paid under a lease to the state or a political subdivision is excluded from the definition of charge. It is clear that the model act's exception to the definition of a charge for compensation received under leases to the state or a political subdivision was included only to resolve the tension between §§ 5 and 6, and not to otherwise expand the opportunities for a landowner to avoid common-law liability.

By contrast, Nebraska's Act uses different terminology in §§ 37-733 and 37-734, as well as expands the number of groups to which the exception to the charge rule applies. While the language of § 37-734 covers the case of leases to the state as enumerated in § 37-733, it is no longer clear from the plain language of the statute that the relevant portion is intended merely to correct tension between the two sections.

It is clear that the Legislature intended to expand the number of entities covered to include groups, organizations, corporations, and the state and federal governments. However, because

§ 37-733 was not similarly expanded, the words of the statute give the impression that the rental-paid exception, while including § 37-733, is not otherwise related to it or limited by it. Compounding this problem is the fact that, unlike the corresponding sections of the model act, the Legislature changed terminology between sections, speaking of leases in § 37-733 and rental paid in § 37-734.

We believe that the resulting confusion between the two sections is sufficient to render the rental-paid exception in § 37-734 unconstitutionally vague. The corresponding portions of the model act were meant to be read together, and when so read they result in a clear statement of legislative intent. In adopting the model act, the Legislature substantially modified § 6 of the model act without similarly modifying § 5. This created unresolvable tensions between the rental-paid exception in § 37-734, the lease provisions of § 37-733, and the definition of charge in § 37-729(4). Because these statutes make it impossible for a person of reasonable intelligence to determine in any given case whether moneys exchanged under a land-use agreement are charges or rents, we are obliged to find that the last sentence of § 37-734 is void due to vagueness.

The next step is determining whether the unconstitutional portion of the Act is severable from the remainder. This court has identified several factors for consideration in determining whether an unconstitutional provision is severable from the remainder of a statute: (1) whether, absent the invalid portion, a workable plan remains; (2) whether the valid portions are independently enforceable; (3) whether the invalid portion was such an inducement to the valid parts that the valid parts would not have passed without the invalid part; (4) whether the severance will do violence to the intent of the Legislature; and (5) whether a declaration of separability indicating that the Legislature would have enacted the bill absent the invalid portion is included in the act. *Duggan v. Beermann*, 249 Neb. 411, 544 N.W.2d 68 (1996). Looking at these factors, we conclude that the rental-paid exception is severable from the remainder of the Act, and we will apply the Act so modified to resolve the case before us.

Without the rental-paid exception, analysis of whether the Act applies is straightforward. If a landowner allows the use of his or her land for recreational purposes without charge, then the landowner is protected by the Act. If the landowner charges for the use of the land, then the landowner is not protected by the Act unless the land is leased to the state or a subdivision thereof, under § 37-733.

It is undisputed that Kiwanis received money from the School for the use of Camp Kiwanis. As there is no evidence that the arrangement between Kiwanis and the School was a lease, the moneys received by Kiwanis in exchange for the use of the camp remove Kiwanis from the Act's protection. Accordingly, the decision of the Court of Appeals as regards Kiwanis must be reversed and the judgment against Kiwanis reinstated.

## CONCLUSION

We hold that § 37-734's exception to the Act's definition of a charge is unconstitutionally vague. We also hold that the sentence containing the rental-paid exception is severable from the rest of the Act, and we apply the Act to the present case as modified. Kiwanis asked for money in return for an invitation to enter or go upon its land, and that money was not received under a lease to the state for recreational purposes. Accordingly, Kiwanis is not entitled to the protection of the Act. The decision of the Court of Appeals is reversed as regards Kiwanis, and the cause is remanded for reinstatement of the verdict against Kiwanis. We have reviewed the Court of Appeals' decision as to the School, and we agree with its reasoning as previously set forth in this opinion. The Court of Appeals' decision regarding the School is affirmed.

As this holding determines the outcome of the appeal, we need not address Teters' arguments regarding the definition of recreational purposes found in § 37-729(3).

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED WITH DIRECTIONS.

STEPHAN, J., not participating.