BROWN COUNTY AGRICULTURAL SOCIETY, INC., APPELLANT, V.
BROWN COUNTY BOARD OF EQUALIZATION, APPELLEE.

660 N.W.2d 518

Filed March 25, 2003.    No. A-02-504.

William F. Austin and Alan M. Wood, of Erickson &
Sederstrom, P.C., for appellant.

David M. Streich, Brown County Attorney, for appellee.

SIEVERS, INBODY, and MOORE, Judges.

MOORE, Judge.

## I. INTRODUCTION

The Brown County assessor notified the Brown County Agricultural Society, Inc. (the Agricultural Society), that her office had determined that a certain portion (the contested space) of the Johnstown Community Hall (the Community Hall) was not being used for a public purpose and thus was subject to real property taxation. The Agricultural Society filed a protest with the Brown County Board of Equalization (Brown County), seeking tax-exempt status for the entire Community Hall. Upon consideration of the protest, Brown County denied tax-exempt status for the contested space, finding that the sale of alcohol in the Community Hall was not a proprietary function of an agricultural society and that the use of the area in which alcohol was sold was more than incidental. The Agricultural Society appealed to the Nebraska Tax Equalization and Review Commission (the TERC). The TERC considered whether the contested space was being used for a public purpose and affirmed the decision of Brown County to deny tax exemption of the contested space. For the following reasons, we reverse, and remand with directions.

## II. BACKGROUND

The Agricultural Society is a county agricultural society duly organized and existing under the County Agricultural Society Act, Neb. Rev. Stat. § 2-250 et seq. (Reissue 1997 & Cum. Supp. 2002), and is a public benefit corporation as defined by Neb. Rev. Stat. § 21-1914(26) (Reissue 1997). It has been in operation for 67 years, and during that time, its primary function has been to provide Brown County with a 3-day fair every year. If a county agricultural society fails to hold a fair for at least 3 successive days, it loses its tax support pursuant to § 2-260. The Agricultural Society receives some county tax dollars. Additional funds in its budget are derived from sources including catering and hall usage, fundraisers, sale and placement of advertising signs in the hall, and admission or gate fees, as well as other revenue generated during the county fair. A county agricultural society is authorized to acquire real estate for the purposes of establishing

fairgrounds and holding county fairs pursuant to § 2-262, and the Agricultural Society has exercised that authority by acquiring and holding certain real property commonly known as the Brown County Fairground (the fairgrounds). The fairgrounds are located within the corporate limits of the village of Johnstown.

Located upon the fairgrounds is the Community Hall, within which is located the contested space that Brown County determined to be taxable for the tax year 2001. The Community Hall has been located upon the fairgrounds since the 1950's, when a building that served as a barracks for officers during World War II was relocated to the fairgrounds. In 1997, the Agricultural Society, in conjunction with Johnstown, refurbished that original Community Hall structure. Johnstown received a $75,000 community development block grant for the project; a loan in the amount of $75,000, together with matching funds in the amount of $50,000, was obtained by the Agricultural Society from the U.S. Department of Agriculture; and labor and equipment valued at $26,000 were donated by the Agricultural Society members, for a total public investment in refurbishing the Community Hall of approximately $226,000. The Agricultural Society pays approximately $15,000 per year for debt service (including both principal and interest), utilities, and insurance for the Community Hall. After the renovation, the Community Hall contained approximately 10,088 square feet. It is fully air conditioned and has a food service and kitchen area, a walk-in storage cooler, restrooms, and a large meeting room capable of holding 600 people. The Brown County Fair is held each year over the Labor Day weekend. The Community Hall is used during the fair to hold dances and provide a free barbecue for those attending the fair.

When the fair is not being conducted, the Agricultural Society allows the Community Hall to be used occasionally for certain other activities. A listing of the activities that occurred in the Community Hall between August 1999 and February 2002 shows that the Community Hall was used approximately 52 times over this period for things such as a polling place, public meetings on telephone service announcements, school activities, extension club meetings, wedding receptions, graduations, reunions, and dances not associated with the county fair. The Community Hall was not leased on any long-term basis for any

activity; rather, the use of the Community Hall was limited to recreational and community activities during which it was occupied for up to approximately 7 hours for a particular activity.

In February 2000, the Agricultural Society applied for a class M liquor license, which was issued on May 1. The Agricultural Society had decided to apply for a liquor license so that it would have greater control over the consumption of alcoholic liquors during the annual county fair and to provide additional revenue to support the fair. The license covers the entirety of the Community Hall as well as a 50- by 200-foot beer garden area just outside of the Community Hall. There is no permanent bar in the Community Hall, and liquor is kept locked in a walk-in cooler when not being used for an event. From August 1999 to February 2002, the availability of alcohol was requested at 27 out of the 52 non-county-fair uses of the Community Hall.

On February 28, 2001, a notice of taxable status was sent to the Agricultural Society by Charlene Fox, the Brown County assessor, advising the Agricultural Society that her office had determined that the Community Hall was not being used or developed for use for a public purpose and was therefore subject to property taxation for the tax year 2001. On March 26, the Agricultural Society filed a timely protest with Brown County as authorized by Neb. Rev. Stat. § 77-202.12(2) (Cum. Supp. 2002). The protest was heard during the April 3 meeting of Brown County, which meeting various Agricultural Society members attended. During a subsequent meeting on April 17, Brown County denied the Agricultural Society tax-exempt status, finding that the sale of alcohol in the Community Hall is not a proprietary function of an agricultural society and that the use of the area in which alcohol was sold was more than incidental. Brown County further found that "the balance of the [C]ommunity [H]all and portions of the real estate outside the [C]ommunity [H]all are used for the consumption of . . . alcohol." Brown County determined that an area measuring 24 by 60 feet within the Community Hall, comprising the storage area and kitchen area, would be taxable.

The Agricultural Society filed an appeal with the TERC on May 30, 2001, from the decision of Brown County. Before the TERC, the Agricultural Society presented testimony from Russ Dodd, the Agricultural Society's treasurer. Dodd testified

regarding the development and use of the Community Hall and specifically testified, without objection, that the Agricultural Society considered the refurbishing of the Community Hall as an improvement to the community. Dodd further testified that the primary function of the Agricultural Society was to provide the community a 3-day fair every year and that its responsibilities included the generation of sufficient funds to hold the fair. Dodd testified that the Community Hall was available to anyone who wished to use it by signing a use agreement and paying a fee that was generally $50 if the Agricultural Society catered the event and $75 if it did not. Individuals signing agreements for the use of the Community Hall make use of the entire hall or only a portion thereof depending on the nature of the event. The funds generated from hall usage and catering are used largely for making payments on the loans that were taken out to refurbish the building. During 2000-2001, the Agricultural Society's catering and usage fees totaled $25,208. Dodd stated that the Community Hall is the only facility within the community, other than the high school gymnasium, in which events of any size can be conducted. The record indicates that in Ainsworth, about 10 miles away from Johnstown, there are an Elks Club, a Legion Club, and a new Ainsworth community center.

Fox testified that based upon her review of Nebraska's Department of Property Assessment and Taxation's regulations, she concluded that the use of the Community Hall for meetings, weddings, and similar activities was more than incidental. Fox also did not consider the use and sale of alcohol "a community improvement or an ag[ricultural] interest." Fox acknowledged that alcohol is consumed throughout the entire building as well as in the beer garden outside of the Community Hall. When asked how she reached her decision to tax only part of the building as opposed to the entire Community Hall and beer garden area, Fox replied:

Well, I basically felt that I should be — that I could treat them, perhaps, like I would treat a permissive exemption, permissive type exemption, even though they really are not one, and that I would just use the portion of the building where the alcohol basically was being served out of, kept in and served out of.

In addition to considering the fact that the Agricultural Society had a liquor license, Fox, in reaching her decision, also considered whether the Community Hall was "really being used totally for public purpose[s]." Fox testified that she did not consider wedding dances, family reunions, private parties, and similar events to be uses of the Community Hall for a public purpose. Fox agreed that the contested space was being used in a "commingled" fashion for both public and nonpublic purposes, rather than being used in a separate and distinct fashion for purposes restricted to that space alone. Fox acknowledged that the Community Hall had never been unavailable for county fair purposes because of other uses and that whatever other uses the Agricultural Society had made of the Community Hall had not detracted from its primary use for the fair. Upon examination by one of the TERC commissioners, Fox indicated that she felt that by taxing the area of the Community Hall where alcohol is kept and served, but not the entire area where alcohol is consumed, she was "being fair" to the Agricultural Society.

The TERC issued findings and an order on April 15, 2002, affirming the decision of Brown County to deny tax exemption of the contested space. It concluded that the contested space is not used to carry out the duties or responsibilities imposed by law on the Agricultural Society and is not used for a qualifying public purpose. In reaching its decision, the TERC examined exhibit 8, the listing of events held at the Community Hall between August 1999 and February 2002, and found that the Community Hall was used a total of 44 days for a public purpose during the approximately 29 months, or 850 days, represented on exhibit 8. The TERC also determined that the contested space was utilized for nonpublic purposes for 78 out of the 850 days considered. The TERC concluded that the use of the contested space for non-governmental purposes was not an " 'incidental' " use, but was, instead, the predominant use of the contested space. With regard to the class M liquor license obtained by the Agricultural Society, the TERC essentially disregarded the emphasis placed by Brown County on the sale or consumption of alcohol, finding that if the liquor license defeated the tax exemption, then the entire Community Hall should be subject to taxation, since the license applied to the entire structure. The TERC concluded that Brown

County's reliance on the liquor license in determining whether the contested space was put to a public use was inconsistent with Brown County's actual decision with regard to taxation. Further details of the TERC's findings and order will be discussed below as necessary.

## III. ASSIGNMENTS OF ERROR

The Agricultural Society asserts, combined and restated, that the TERC erred in (1) finding that the contested space was not being used for a public purpose as defined in Neb. Rev. Stat. § 77-202 (Cum. Supp. 2000); (2) finding that occasional use of the contested space for meetings, dances, dinners, and receptions was not an incidental use of the premises; (3) finding that the contested space was leased for nonpublic purposes as the term "lease" is used in § 77-202(1)(a)(ii); and (4) finding that the Agricultural Society failed to meet its burden of demonstrating that the decision of Brown County was unreasonable or arbitrary under the facts.

## IV. STANDARD OF REVIEW

Decisions rendered by the TERC shall be reviewed by the court for errors appearing on the record of the commission. *Marshall v. Dawes Cty. Bd. of Equal.*, 265 Neb. 33, 654 N.W.2d 184 (2002). When reviewing a judgment for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Id.* However, in instances when an appellate court is required to review cases for error appearing on the record, questions of law are nonetheless reviewed de novo on the record. *Id.* The meaning of a statute is a question of law, and a reviewing court is obligated to reach its conclusions independent of the determination made by the TERC. *City of Alliance v. Box Butte Cty. Bd. of Equal.*, 265 Neb. 262, 656 N.W.2d 439 (2003).

An exemption from taxation is never presumed. *Lackawanna Leather Co. v. Nebraska Dept. of Rev.*, 259 Neb. 100, 608 N.W.2d 177 (2000). The burden of showing entitlement to a tax exemption is on the applicant. *Id.* Since a statute conferring an exemption from taxation is strictly construed, one claiming an

exemption from taxation of the claimant or the claimant's property must establish entitlement to the exemption. *Id.*

## V. ANALYSIS

### 1. CONTESTED SPACE USED FOR PUBLIC PURPOSE

The first issue presented in this appeal is whether the use of the contested space within the Community Hall constitutes a public use of the premises entitling the Agricultural Society to a property tax exemption for the contested space. The property tax exemptions relevant to this appeal are found in § 77-202, which provides in relevant part:

> (1) The following property shall be exempt from property taxes:
>
> (a) Property of the state and its governmental subdivisions to the extent used or being developed for use by the state or governmental subdivision for a public purpose. For purposes of this subdivision, *public purpose means use of the property (i) to provide public services with or without cost to the recipient, including* the general operation of government, public education, public safety, transportation, public works, civil and criminal justice, public health and welfare, developments by a public housing authority, parks, culture, *recreation, community development,* and cemetery purposes, *or (ii) to carry out the duties and responsibilities conferred by law with or without consideration.* Public purpose does not include leasing of property to a private party unless the lease of the property is at fair market value for a public purpose. Leases of property by a public housing authority to low-income individuals as a place of residence are for the authority's public purpose.

(Emphasis supplied.)

We also consider § 2-251, which provides:

> All county agricultural societies existing, organized, or reinstated on or after January 1, 1998, shall comply with the County Agricultural Society Act and shall annually offer and award premiums and perform such other acts *which such society deems will be for the improvement of agriculture, industry, homes, and communities of the state.* For purposes of the act, county agricultural society means all

> county agricultural societies existing, organized, or rein-
> stated on or after January 1, 1998.

(Emphasis supplied.)

In its order, the TERC found that the walk-in cooler, kitchen, and food preparation and service area in the contested space were used for cold food and liquor storage and for the cooking and other preparation and service of food. The TERC found that while this was consistent with the Agricultural Society's stated goal of providing barbecues to those attending the annual fair, "[t]here is . . . nothing in the statutes which compels the [Agricultural] Society to provide a free meal to those attending the fair." The TERC concluded that "[t]here is, in sum, no evidence to support the contention that the use of the contested space is necessary to perform the duties imposed on the [Agricultural] Society by law." The TERC further concluded that the Agricultural Society failed to adduce sufficient clear and convincing evidence that the contested space was used to satisfy any of the purposes listed in § 77-202(1)(a)(i).

### (a) Necessity of Contested Space
### to Perform Duties Imposed by Law

The Agricultural Society is required by law to conduct a county fair each year pursuant to § 2-260 and is authorized to acquire real estate as may be necessary for the purpose of holding the fair pursuant to § 2-262. The TERC found that the use of the contested space is not necessary for this purpose, since the Agricultural Society is not statutorily required to provide a free barbecue. However, it is not necessary that an entity be statutorily mandated to perform an activity in order for the property to be considered necessary to carry out duties imposed by law. See *City of Alliance v. Box Butte Cty. Bd. of Equal.*, 265 Neb. 262, 656 N.W.2d 439 (2003). While the TERC is correct that no statute requires the provision of a free barbecue, there is nothing in the statutes that specifically sets forth the activities an agricultural society is required to offer at a county fair. Certainly, the consumption of food and beverages is a common activity at a county fair. The provision of facilities to accomplish this activity is consistent with an agricultural society's conducting a county fair. Viewed in another light, if the contested space is not

"necessary" for the holding of a county fair, the same could be found true of the entire building. The balance of the Community Hall, which balance Brown County considers exempt, includes a large common room with tables and chairs as well as an outdoor beer garden area. The balance of the building is used during the fair as a location for fair attendees to sit and eat the meal provided by the Agricultural Society as well as to use the restroom facilities. If the Agricultural Society is not required to provide a meal to fair attendees, then it is also not required to provide a facility for the consumption of the meal.

We conclude that it is arbitrary and unreasonable to carve out a portion of the Community Hall and determine that it is not necessary for the holding of a county fair. If the balance of the Community Hall serves the purpose of a county fair, then the contested space does as well. The Community Hall would be of little benefit during the fair without the kitchen, food service, and storage areas.

### (b) Public Purpose Under § 77-202(1)(a)

Dodd testified that the Agricultural Society considered the refurbishing of the Community Hall as an improvement to the community. The record shows that although there are other meeting facilities approximately 10 miles distant in Ainsworth, the Community Hall is the only facility within Johnstown, other than the high school gymnasium, in which events of any size can be conducted. The contested space is clearly used for many things that the parties agree are "public uses," that is, for the provision of dances and barbecues during the county fair, as a polling place, for meetings of the Agricultural Society, for school science fairs, and similar activities.

Making the contested space available to the public for reasonable private recreational uses fits within the duties conferred by law upon the Agricultural Society and is a use designed to promote recreation and community development within Johnstown. Given the broad language of the mandate given to the Agricultural Society in § 2-251, we find that the decision that the use of the contested space did not constitute a public use did not conform to the law, was not supported by competent evidence, and was arbitrary, capricious, and unreasonable.

## 2. INCIDENTAL USE OF CONTESTED SPACE

Section 77-202(1)(c) provides that "[p]roperty owned by and used exclusively for agricultural and horticultural societies" shall be exempt from property taxes. The concept of exclusive use has been defined in the Nebraska Administrative Code as "the predominant use of the property, to such an extent that an occasional or incidental use of the property for other purposes will not disqualify the property for an exemption." 350 Neb. Admin. Code, ch. 40, § 004.02 (2002). "Incidental use shall mean a use of a property which is other than the primary use and is so minor or secondary in nature as not to distract from the primary use." 350 Neb. Admin. Code, ch. 15, § 002.21 (2002). In the context of tax exemption for charitable uses, the Nebraska Supreme Court has held that exclusive use means the primary or dominant use of property, as opposed to incidental use. *Bethesda Found. v. Buffalo Cty. Bd. of Equal.*, 263 Neb. 454, 640 N.W.2d 398 (2002). It has also held that the primary or dominant use of a property is controlling in determining whether property is exempt from taxation. *Id.* Therefore, even if the use of the contested space for events such as wedding and graduation receptions is not considered a public use of the space, the contested space may still be treated as tax-exempt property if use of the space for those purposes is incidental to the primary use of the contested space for the annual county fair.

In concluding that the extent of the "non-public" use of the contested space was contrary to the statutory and regulatory provisions, the TERC applied a rather mechanical approach and determined that the "non-public" uses permitted by the Agricultural Society constituted the predominant use of the contested space. Upon its examination of exhibit 8, the listing of events held at the Community Hall between August 1999 and February 2002, the TERC concluded that the property was put to "no use" for 728 days out of approximately 850 total days and that the property was " 'used' " for a total of 122 days during this period. Based on its evaluation of which uses were or were not public uses, the TERC then concluded that the property was used for 44 out of 122 days for a public purpose, or used 36 percent of the time for public purposes and 64 percent of the time for nonpublic purposes.

While this analysis demonstrates that the Community Hall premises are used on more "usage" days for what the TERC deems nonpublic purposes, this does not necessarily mean that the use of the contested space for nonpublic purposes is more than incidental. During the days of "non-use," the property is still being held by the Agricultural Society for its primary purpose of conducting an annual county fair. It is noted in 84 C.J.S. *Taxation* § 335 (2001):

> Under constitutional or statutory provisions granting exemption with respect to property used exclusively, solely, wholly, or strictly for charitable purposes, exemption will be granted where the charitable use is exclusive, and denied where it is not. Nevertheless, the courts have not hesitated to give the word "exclusive," as used in these statutes, an elastic interpretation. The fact that property is used principally or largely for the purposes specified by statute has been held insufficient ground for exemption, although other authorities hold that a primary use for such purposes is sufficient.

In *Lincoln Woman's Club v. City of Lincoln*, 178 Neb. 357, 133 N.W.2d 455 (1965), the court upheld the tax exemption of a women's club. In that case, a building and, in particular, certain portions of that building were used by the club only a small fraction of the time. The court noted that while premises not used at all would not qualify for tax exemption under the relevant constitutional and statutory provisions, it did not follow that the premises must be used on a continuous or daily basis or any major proportion of the time. The court concluded that if the property was actually used exclusively for educational, religious, or charitable purposes, the exemption was not lost because the use was for less than full time. Based upon the foregoing authority, we conclude that it was arbitrary for the TERC to disregard the days when the Community Hall property was not actually used in determining its primary purpose.

Other jurisdictions have upheld tax exemptions of property owned by agricultural societies but used by other individuals or groups. See, *Mtr. Agric. Soc. v Cluchey*, 40 N.Y.2d 194, 201-02, 352 N.E.2d 552, 555 (1976) (allowing tax exemption where agricultural society rented fairgrounds to trotting association when society demonstrated its "permanent use" of property as

fairground under statute not requiring "'exclusive use'" test); *West Hartford v. Connecticut Fair Asso.*, 88 Conn. 627, 92 A. 432 (1914) (stock corporation organized to hold agricultural fairs was not deprived of exemption from taxation due to its leasing of fairgrounds for horse and automobile racing when not holding fairs); *Agricultural Soc v Saginaw*, 142 Mich. App. 173, 368 N.W.2d 878 (1984) (tax exemption for property owned by agricultural society not lost where fairgrounds used by public for private storage during off-season).

In the present case, the record indicates that the primary use of the contested space is for the annual county fair. The Community Hall property has never been unavailable for use during the county fair because of the other uses, and these other uses have not detracted from the property's primary use. We conclude that the use of the contested space for wedding and graduation receptions and similar events, if not use for a public purpose, is use that is incidental to use of the property for its main purpose in conjunction with conducting the annual county fair. The decision of the TERC to the contrary is contrary to the law, is not supported by the evidence, and is arbitrary, capricious, and unreasonable.

### 3. LEASE OR LICENSE OF CONTESTED SPACE

We address one final issue raised by the TERC's findings and order. The TERC found that the record demonstrated that the use of the Community Hall was "leasing for non-public purposes," a use specifically prohibited by § 77-202. That statute specifically provides in subsection (1)(a)(ii) that "[p]ublic purpose does not include leasing of property to a private party unless the lease of the property is at fair market value for a public purpose." The Agricultural Society argues that the premises in question are not "leased" to private parties as the term "lease" is used in the above-quoted statutory provision. We agree.

According to 350 Neb. Admin. Code, ch. 15, § 002.15 (2002), "Lease shall mean a contract between the lessor and lessee wherein the lessor conveys to the lessee the exclusive right to possess, use, and enjoy property for a specified period of time in exchange for legal consideration. Lease shall not include an easement or license in property." A lease is a species of contract for the possession and profits of land and tenements, either for

life or for a certain period of time, or during the pleasure of the parties; and the essential elements of a contract must be present. *Teters v. Scottsbluff Public Schools*, 5 Neb. App. 867, 567 N.W.2d 314 (1997), *reversed in part on other grounds* 256 Neb. 645, 592 N.W.2d 155 (1999). A lease of real estate is a hiring or renting of it for a certain time for a named consideration. *Id.* A license in respect of realty is an authority to do an act on the land of another without possessing any estate in the land and is to be distinguished from a grant or demise creating some interest in the property. *Id.*

The record in the present case indicates that individuals who wish to make use of the Community Hall for short periods enter into usage agreements with the Agricultural Society, which charges a fee for the use, that fee being generally $50 if the Agricultural Society caters the event and $75 if it does not. Based on the record before us, we conclude that the usage agreements entered into by the Agricultural Society and private individuals are more in the nature of licenses than leases. The Agricultural Society charges a fee for use of the premises, which fee varies according to the level of service provided by the Agricultural Society in conjunction with the event. The Agricultural Society is not granting these individuals an estate or interest in the land as contemplated by a lease arrangement. We are not presented with a situation where the Agricultural Society is renting out the Community Hall, or certain portions thereof, on a monthly basis for use as a restaurant, lounge, or some other commercial use. The usage agreements employed by the Agricultural Society are more akin to grants of authority to private individuals to conduct a particular recreational celebration upon Agricultural Society land without possession of any estate in that land. Accordingly, we conclude that the TERC's finding that the contested space is being leased for nonpublic purposes in violation of the prohibition found in § 77-202(1)(a)(ii) is contrary to the law, is not supported by the evidence, and is arbitrary, capricious, and unreasonable.

### 4. DECISION OF BROWN COUNTY UNREASONABLE OR ARBITRARY

In its findings and orders, the TERC concluded that the Agricultural Society had failed to demonstrate by clear and

convincing evidence that the decision of Brown County was unreasonable or arbitrary. Based upon our foregoing discussion, we conclude that the Agricultural Society satisfied its burden of showing entitlement to a tax exemption for the contested space. See *Lackawanna Leather Co. v. Nebraska Dept. of Rev.*, 259 Neb. 100, 608 N.W.2d 177 (2000). The record clearly shows that the primary use of the contested space is in conjunction with the Agricultural Society's obligation to conduct an annual county fair, that availability of the Community Hall for public meetings and reasonable private parties serves a legitimate public purpose of recreation and community improvement, and that any nonpublic uses of the contested space are incidental to its primary or dominant use. The TERC erred in finding that the Agricultural Society had not demonstrated that the decision of Brown County was unreasonable or arbitrary and in finding that the Agricultural Society was not entitled to a tax exemption for the contested space.

## VI. CONCLUSION

We conclude that the contested space is owned by the Agricultural Society and used exclusively for agricultural society purposes within the meaning of § 77-202 in that the primary or dominant use of the property is for agricultural society purposes. Therefore, the TERC's order is reversed, and the cause is remanded to the TERC with directions to instruct Brown County to grant the exemption to the Agricultural Society for the contested space.

REVERSED AND REMANDED WITH DIRECTIONS.